**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARA-AIMEE LONG CORRA and VALARIE HANNA, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:22-cv-02917-GEKP |
| v. | |
| ACTS RETIREMENT SERVICES, INC. | |
| Defendant. | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL
<u>OF A CLASS ACTION SETTLEMENT</u>**

**Table of Contents**

I.    INTRODUCTION ................................................................................................. 1

II.   FACTUAL BACKGROUND ............................................................................... 2

III.  THE PROPOSED SETTLEMENT ..................................................................... 4

      A.   The Settlement Benefits .......................................................................... 4

      B.   Attorneys' Fees and Expenses, Class Representative Service Awards, and
           Settlement Administration. ...................................................................... 6

      C.   Notice Program and Settlement Administration ..................................... 6

IV.   ARGUMENT ...................................................................................................... 7

      A.   The Settlement is "Fair, Reasonable, and Adequate" and Satisfies Rule 23(e)(2)
           Factors for Preliminary Approval. ......................................................... 9

           1.   The Proposal Was Negotiated at Arm's Length. ....................... 10

           2.   The Relief Provided for the Class Is Adequate......................... 11

                a.   The Settlement accounts for the costs, risks, and delay of trial
                     and appeal. ................................................................... 12

                b.   The settlement provides for an effective method of distributing
                     relief to the class, including a straightforward claims process. .... 13

                c.   The proposed attorneys' fee award is reasonable ......................... 13

      B.   The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)..................... 14

           1.   The Class Is Sufficiently Numerous. .......................................... 14

           2.   There are Questions of Law or Fact Common to the Class. ..................... 14

           3.   The Class Representatives Claims Are Typical of the Claims of the
                Class........................................................................................ 15

           4.   The Class Representatives and Co-Lead Counsel Will Fairly and
                Adequately Represent the Class............................................... 16

           5.   Common Issues Predominate over any Individual Issues and a Class
                Action Is Superior to Other Available Methods of Adjudicating the
                Controversy............................................................................... 16

                a.   Common issues predominate. ..................................................... 17

                b.   A class action is superior to other means of adjudication............. 18

      C.   The Notice Program Provides Class Members with the Best Notice Practicable
           Under the Circumstances. ..................................................................... 19

V.    APPOINTMENT OF CLASS COUNSEL ....................................................... 21

VI.   SCHEDULE FOR FINALIZING THE SETTLEMENT................................. 22

VII.  CONCLUSION ................................................................................................. 22

## Table of Authorities

Page(s)

Cases

*Amchem Prods. v. Windsor*,
   521 U.S. 591 (1997)......................................................................................... 14

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)............................................................................. 8

*Eisen v. Carlisle and Jacquelin*,
   417 U.S. 156 (1974)......................................................................................... 20

*Fulton-Green v. Accolade, Inc.*,
   No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 23, 2019)................................. 8, 14, 15, 18

*Gates v. Rohm & Haas Co.*,
   248 F.R.D. 434 (E.D. Pa. 2008)....................................................................... 10, 14

*Girsh v. Jepson*,
   521 F.3d 153 (3d Cir. 1975)............................................................................. 9

*Hall v. Accolade, Inc.*,
   No. 2:17-cv-03423, 2019 WL 3996621 (E.D. Pa. Aug. 23, 2019) ................................. 7, 8, 15

*In re CertainTeed Fiber Cement Siding Litig.*,
   303 F.R.D. 199 (E.D. Pa. 2014)....................................................................... 12

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liab. Litig.*,
   No. 11-md-02284, 2013 WL 504857 (E.D. Pa. Feb. 12, 2013)................................. 9

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*,
   296 F.R.D. 351 (E.D. Pa. 2013)....................................................................... 16

*In re Nat'l Football League Players' Concussion Injury Litig.*,
   301 F.R.D. 191 (E.D. Pa. 2014)....................................................................... 10, 20

*In re Nat'l Football League Players Concussion Injury Litig.*,
   775 F.3d 570 (3d Cir. 2014)............................................................................. 19

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016)............................................................................. 15, 17

*In re Processed Egg Prods. Antitrust Litig.*,
   No. 08-md-2002, 2014 WL 12614451 (E.D. Pa. Dec. 19, 2014) ........................ 8, 18

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004)....................................................................... 8, 14, 17

*Mack Trucks, Inc. v. Int'l Union, UAW*,
   No. 07-cv-03737, 2011 WL 1833108 (E.D. Pa. May 12, 2011)............................. 10

*Mehling v. New York Life Ins. Co.*,
   246 F.R.D 467 (E.D. Pa. 2007)............................................................................. 10

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950).............................................................................................. 19

*Myers v. Jani-King of Philadelphia, Inc.*,
   No. CV 091738, 2019 WL 20777192 (E.D. Pa. May 10, 2019 ............................... 8

*Sullivan v. DB Investments, Inc.*,
   667 F.3d ............................................................................................................... 17

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)......................................................................................... 17

*Vinh Du v. Blackford*, No. 17-CV-1,
   94, 2018 WL 6604484 (D. Del. Dec. 17, 2018)................................................. 9, 13

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)............................................................................................. 15

Rules

Fed. R. Civ. P. 23 ................................................................................................. 10
Fed. R. Civ. P. 23(3)(2)........................................................................................... 9
Fed. R. Civ. P. 23(a)............................................................................................. 14
Fed. R. Civ. P. 23(a)(1)......................................................................................... 14
Fed. R. Civ. P. 23(a)(2)......................................................................................... 14
Fed. R. Civ. P. 23(a)(3)......................................................................................... 15
Fed. R. Civ. P. 23(b)............................................................................................. 14
Fed. R. Civ. P. 23(b)(3)..................................................................................... 14, 22
Fed. R. Civ. P. 23(c).............................................................................................. 8
Fed. R. Civ. P. 23(c)(2)........................................................................................... 6
Fed. R. Civ. P. 23(c)(2)(B) ..................................................................................... 8
Fed. R. Civ. P. 23(e)........................................................................................... 7, 22
Fed. R. Civ. P. 23(e)(1)........................................................................................ 6, 8
Fed. R. Civ. P. 23(e)(2); and (ii) .......................................................................... 8, 9
Fed. R. Civ. P. 23(e)(3); and (D) ............................................................................ 9
Fed. R. Civ. P. 23(e)(1)(A) ..................................................................................... 7
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................................... 8

Fed. R. Civ. P. 23(g)(1)(A) ........................................................................................................ 21

## I.  INTRODUCTION

Plaintiffs, Cara-Aimee Long Corra and Valarie Hanna ("Plaintiffs") and Defendant, ACTS Retirement Services, Inc. ("Defendant" or "ACTS"), with the assistance of the Honorable Wayne Andersen (Ret.) of JAMS, have reached an agreement to resolve this class action lawsuit. Plaintiffs were both former employees of Defendant, whose personal identifying information was disclosed during an April 2022 Data Security Incident ("Data Security Incident"). Pursuant to the terms of the Parties' Settlement Agreement, (the "Settlement Agreement" or "S.A."),[1] Plaintiffs now respectfully submit this memorandum of law in support of the accompanying motion ("Motion").  Exhibit 1 (Settlement Agreement).  The Motion asks the Court to enter an order preliminarily approving the settlement as detailed in the Settlement Agreement, provisionally certify the Settlement Class defined herein, find that the proposed Notice Plan provides the best notice practicable, direct the notice of the Settlement be disseminated to members of the Class in the form and manner proposed, and schedule a Final Approval Hearing to address whether the Settlement should be finally approved. Defendant does not oppose this motion or the requested relief.

Briefly, the Settlement provides for several layers of relief.  First, Class Members can seek compensation for both ordinary and extraordinary losses. Ordinary losses are any out-of-pocket expenses, up to a maximum of $350, caused by the Data Security Incident.  That includes such things as bank fees, phone charges, data charges, postage and/or gasoline for travel to banks or other financial institutions, as well as payments for credit reports, credit monitoring or identity theft insurance. Class Members can also get up to $75 (3 hours at $25) for time lost dealing with

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Motion.  Unless otherwise indicated, the capitalized terms have the same definition as set forth in the Settlement Agreement.

the fallout from the Data Security Incident, including, but not limited to, time spent on the telephone dealing with financial institutions or credit card companies. For extraordinary losses, Class Members can get up to $3,500 for documented identity theft that was more likely than not the result of the Data Security Incident. Class Members are further entitled to two (2) years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product, which includes Dark Web Monitoring and can cost anywhere from $7-20 per person, per month.[2] The cash components are capped at $350,000; credit monitoring, theft insurance, and Dark Web Monitoring are not capped in any fashion. Finally, the Settlement includes an injunctive component, requiring that Defendant enhance its cybersecurity protocols and make significant improvements to its data storage practices.

The Settlement compares favorably with settlements in similar Data Security Incident litigation and was reached only after intensive arm's length negotiations before a skilled mediator. Accordingly, Plaintiffs respectfully request that the Court preliminarily approve the terms and conditions of the Settlement and permit notice to the Settlement Class.

## II.    FACTUAL BACKGROUND

Plaintiffs Cara-Aimee Long Corra and Valarie Hanna both worked for ACTS over 20 years ago. ACTS is a not-for-profit parent company to many affiliate companies that provide residential, assisted living, and skilled care services to senior citizens. As an employer and housing/medical services provider, ACTS collects and maintains personal identifying information ("PII") and personal health information ("PHI") for its current and former employees and its current and former residents. The PII and PHI ACTS collects and maintains—and the information that may have been exposed in the Data Security Incident—includes name,

---

[2] Details about Pango's service are available at: https://identitydefense.com/

address, Social Security number, date of birth, financial account number and routing number, and medical treatment or diagnosis information.

There are conflicting accounts as to how the Data Security Incident was uncovered. According to the notice letter (dated June 27, 2022) ACTS sent to the 20,754 impacted people, ACTS determined on May 2, 2022, that data was being accessed and acquired without authorization since April 29, 2022. According to ACTS' interrogatory responses, beginning on or around April 7, 2022, ACTS detected suspicious activity on its network and hired cyber investigators, but it took the investigators almost six weeks to determine what information was accessed and acquired.

ACTS first began notifying impacted current and former residents and employees in or around June and July 2022. Both Plaintiffs received their notice letters in early July 2022. By mid-July, Plaintiff Corra experienced fraud on her checking account when someone tried to transfer $2500 via Zelle. The bank intervened in time to stop the fraudulent transaction from processing, but Plaintiff spent several hours on the phone and online dealing with this fraud and then freezing her credit and enrolling in credit monitoring and protection. Plaintiff Corra also has experienced an increase in spam phone calls and text messages. Plaintiff Hanna has similarly devoted dozens of hours to reviewing her financial statements and credit reports to guard against any fraud or identity theft. Additionally, the Plaintiffs remain at present and continuing risk of identity theft and fraud far into the future.

Plaintiff Corra filed the first complaint on July 26, 2022 (Dkt. 1), and Plaintiff Hanna was added on October 12, 2022, via an amended complaint (Dkt. 15).  Defendant moved to dismiss on October 26, 2022. Dkt. 17. That motion was fully briefed as of November 15, 2022, and the Court heard oral argument on December 22, 2022 (Dkt. 22), and supplemental briefing was

ordered and submitted (Dkt. 24, 26). On December 22, the Court also held a case management

conference and set a schedule for the disclosure of experts and class certification briefing. Dkt.

23. Thereafter, the parties agreed on and submitted to the Court a proposed protective order and

ESI protocol, both which we approved. Dkt. 28, 30. Written discovery was served by both

parties; responses were provided, and documents produced.

      With Plaintiffs' expert disclosures initially due on May 5, 2023 (Dkt. 23), the parties

agreed to attend private mediation in March 2023. The Court denied the parties' request to stay

the case pending mediation (Dkt. 32), and instead granted a brief extension of the deadlines (Dkt.

34). If the May 31, 2023, mediation proved unsuccessful, Plaintiffs were due to disclose their

experts on June 20, 2023. Dkt. 34.

      After a full-day mediation on May 31, 2023, with Judge Andersen, the parties reached

agreement on the material terms of the settlement. Over the following weeks, the parties worked

to negotiate the details of the settlement and draft the Settlement Agreement, which was finalized

on July 13, 2023.

### III.  THE PROPOSED SETTLEMENT

#### A.        The Settlement Benefits

The Settlement provides for three-tiers of monetary relief to Class Members. Class

Members can seek compensation for both ordinary and extraordinary losses. Ordinary losses are

any out-of-pocket expenses, up to a maximum of $350, caused by the Data Security Incident.

S.A., ¶3.1(a). That includes such things as bank fees, phone charges, data charges, postage

and/or gasoline for travel to banks or other financial institutions, as well as payments for credit

reports, credit monitoring or identity theft insurance. *Id*. Class Members can also get up to $75 (3

hours at $25) for time lost dealing with the fallout from the Data Security Incident, including, but

not limited to, time spent on the telephone dealing with financial institutions or credit card companies. *Id.*, ¶3.1(a)(iii). For extraordinary losses, Class Members can get up to $3,500 for documented identity theft that was more likely than not the result of the Data Security Incident. *Id.*, ¶3.1(b). Class Members are also entitled to two (2) additional years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product, which includes Dark Web Monitoring and can cost anywhere from $7-20 per person, per month. *Id.*, ¶3.3. While the cash components are capped at $350,000; credit monitoring, theft insurance, and Dark Web Monitoring are not capped in any fashion. *Id.*, ¶3.2.

Finally, the Settlement includes an injunctive component, requiring that Defendant enhance its cybersecurity protocols and make significant improvements to its data storage practices. *Id.*, ¶3.4. Specifically, ACTS changed passwords and strengthened password requirements, extended multi-factor authentication, implemented new technical safeguards and additional mobile device management controls, updated data retention approaches, trained and/or retrained workforce members, added as 24/7 Managed Detection and Response service to augment internal resources and protections, implemented Microsoft's full lifecycle data compliance and governance solutions, and removed archival data from on-premises servers and further restricted access to archival data. *Id.* ACTS agrees to pay for such ongoing security changes separate and apart from other settlement benefits. *Id.*

In exchange for the benefits set forth in the Settlement Agreement, all Class Members who do not exclude themselves from Settlement release their claims against ACTS arising from the Data Security Incident.  If approved by the Court, the Settlement will result in the dismissal with prejudice of all claims asserted against ACTS related to the Data Security Incident. *Id.*, ¶3.10.

### B.    Attorneys' Fees and Expenses, Class Representative Service Awards, and Settlement Administration.

Separate and apart from the compensation to Class Members, ACTS has agreed to pay $250,000 to cover payment of attorneys' fees and expenses. *Id*., ¶3.6. In addition, Plaintiffs will apply to the Court, and ACTS has agreed to pay, $2,500, as Service Awards to each of the two (2) Class Representatives. *Id*., ¶3.7. The proposed Service Awards are intended to recognize the Class Representatives for their time, effort, and commitment on behalf of the Settlement Class, including participating in discovery.

ACTS has also agreed to pay the costs associated with Settlement Administration, including the dissemination of Notice and claims processing. *Id*., ¶¶3.8, 4.1. To that end, Plaintiffs request the Court appoint the Angeion Group to serve as the Settlement Administrator to oversee Notice to the Class and to administer the claims process pursuant to the terms of the Settlement Agreement. *Id*., ¶4.2. Angeion Group has extensive experience administering similar consumer settlements.[3]

### C.    Notice Program and Settlement Administration

The Parties have jointly developed a proposed Notice Program that comports with the requirements of both Fed. R. Civ. P. 23(c)(2) and 23(e)(1).  ACTS has names and mailing address for the Class Members, and as such, the Claims Administration will send the Notice to all Class Members by first-class U.S. Mail. *Id*., ¶5.3. The Notice Program aims to inform Class Members of the Settlement and ensure that they will understand their right and options, including the right to object to the Settlement or opt out of the Settlement Class, and how to file a claim and receive the Settlement benefits.

---

[3]*See* https://www.angeiongroup.com/data-breach/

The mailed Notice will consist of a Short Form Notice in a form substantially like the one attached to the Settlement Agreement as Exhibit A. *Id*., ¶5.4. Simultaneous with the mailing of the Notice, the Claims Administrator will establish a website dedicated to the Settlement. *Id*., ¶5.8. The website will provide detailed information about the litigation, the Settlement, Class Members' rights and options, and instructions on, and deadlines for, filing a claim, objecting to the Settlement, and opting out of the Class. *See id.* In addition, the Settlement Website will have available the Complaint, Short Form Notice (S.A., Exhibit A), the Long Form Notice (S.A., Exhibit B), and the Claim Form (S.A., Exhibit C), as well as the Settlement Agreement itself. Class Members will be able to file their claims electronically through the Settlement Website, or through the mail in hardcopy form. *Id*., ¶¶4.6, 5.10.

Class Members will have ninety (90) days from the date the Notice is mailed to submit a Claim Form to receive compensation and/or credit monitoring benefits. *Id*., ¶¶1.3, 3.5. The Claims Administrator will have the sole discretion to determine a Class Members' eligibility to participate in the Settlement and whether the submitted claim is valid. *Id*., ¶4.8. Prior to denying a claim, the Claims Administrator may request from the Class Member additional information to substantiate the claim. *Id*.

## IV.  ARGUMENT

Federal Rule of Civil Procedure 23(e), "explicitly discusses the requirements for class settlements." *Hall v. Accolade, Inc.*, No. 2:17-cv-03423, 2019 WL 3996621, at *2 (E.D. Pa. Aug. 23, 2019) (Pratter, J.). First, the parties "provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. P. 23(e)(1)(A). The court then decides whether "giving notice is justified by the parties' showing that the court will

likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

In conducting their preliminary review, courts are cognizant that there is a "strong public policy . . . which is particularly muscular in class action suits, favoring settlement of disputes, finality of judgments and the termination of litigation." *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010); *accord In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged.").

At this "preliminary approval" stage, a district court may provisionally certify a class, "leaving the final certification decision for the subsequent fairness hearing." *Hall,* 2019 WL 3996621, at *2; *accord Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *1 (E.D. Pa. Jan. 23, 2019) (Pratter, J.); *Myers v. Jani-King of Philadelphia, Inc.*, No. CV 09-1738, 2019 WL 2077719, at *2 (E.D. Pa. May 10, 2019) (preliminary approval is not a commitment to grant final approval but "establishes an initial presumption of fairness").

If the district court determines that it will "likely be able to" approve the Settlement and certify the Settlement Class, it should direct notice in a "reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). The notice is usually sent under both Rule 23(e)(1) (regarding settlement) and Fed. R. Civ. P. 23(c)(2)(B) (regarding class certification). *See* 2018 Advisory Committee Notes on Rule 23(c); *Fulton-Green,* 2019 WL 316722, at *1, *5 (granting motion for preliminary approval of data breach settlement "because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement"); *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2014 WL 12614451,

at *2-4 (E.D. Pa. Dec. 19, 2014) (Pratter, J.) (conditionally certifying class, preliminarily

approving settlement, and directing notice to proposed class); *In re Imprelis Herbicide Mktg,*

*Sales Prac. and Prods. Liab. Litig.*, No. 11-md-02284, 2013 WL 504857, at *1 (E.D. Pa. Feb.

12, 2013) (Pratter, J.) (same).

### A. The Settlement is "Fair, Reasonable, and Adequate" and Satisfies Rule 23(e)(2) Factors for Preliminary Approval.

Rule 23(e)(2) sets forth the factors a court must consider in determining the fairness of a

class action settlement. The factors include whether: "(A) the class representatives and class

counsel have adequately represented the class; (B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay

of trial and appeal, (ii) the effectiveness of any proposed method of distributing relief to the

class, including the method of processing class-member claims, (iii) the terms of any proposed

award of attorney's fees, including timing of payment, and (iv) any agreement required to be

identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to

each other." Fed. R. Civ. P. 23(e)(2).[4]

In determining whether preliminary approval is warranted, the Court should consider

whether the "proposed settlement discloses grounds to doubt its fairness or other obvious

---

[4] As the court in *Vinh Du v. Blackford*, No. 17-CV-194, 2018 WL 6604484, at *5 (D. Del. Dec. 17, 2018) explains, the Rule 23(3)(2) factors largely overlap with the nine factors the Third Circuit directed courts to consider when determining the fairness of a proposed settlement in *Girsh v. Jepson*. Those factors are: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Blackford*, 2018 WL 6604484, at *6 (*quoting Girsh*, 521 F.3d 153, 157 (3d Cir. 1975)).

deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval." *Mehling v. New York Life Ins. Co*., 246 F.R.D 467, 472 (E.D. Pa. 2007) (citations omitted); *see also Mack Trucks, Inc. v. Int'l Union, UAW*, No. 07-cv-03737, 2011 WL 1833108, at *2 (E.D. Pa. May 12, 2011) (same). Under Rule 23, a settlement falls within the "range of possible approval" if there is a conceivable basis for presuming that the standard applied for final approval—fairness, adequacy and reasonableness—will be satisfied. *See Mehling*, 246 F.R.D. at 472.

The Settlement here, as explained below, exceeds the preliminary approval threshold. Plaintiffs, without opposition from Defendant, respectfully request that this Court preliminarily approve the proposed Settlement.

### 1. The Proposal Was Negotiated at Arm's Length.

The Settlement resulted from arm's-length negotiations between experienced counsel with an understanding of the strengths and weaknesses of their respective positions in this litigation, assisted by a neutral and highly experienced mediator who spent 20 years as a United States District Judge for the Northern District of Illinois, the Hon. Wayne Andersen (Ret.). These circumstances weigh in favor of approval. Whether a settlement arises from arm's-length negotiations is a key factor in assessing preliminary approval. *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) (a presumption of fairness exists where parties negotiate at arm's length, assisted by a retired federal judge who served as a mediator); *Gates v. Rohm & Haas Co*., 248 F.R.D. 434, 439, 444 (E.D. Pa. 2008) (stressing the importance of arm's-length negotiations and highlighting the fact that the negotiations included "two full days of mediation").

The Parties participated in settlement discussions mediated by Judge Andersen, during which they reached an agreement in principle after assessing several rounds of offers and counter-offers. Proposed Class Counsel, who negotiated the Settlement, are experienced and respected class action litigators with significant experience in data breach cases. The Parties thereafter spent significant amounts of time revising drafts and negotiating details of the final written Settlement Agreement that is now presented to the Court for approval. At all times, these negotiations were at arm's length and, while courteous and professional, were hard-fought on all sides.

### 2. The Relief Provided for the Class Is Adequate.

This case and the proposed Settlement are the product of significant investigation of Plaintiffs' and Class Members' claims. Proposed Class Counsel investigated the Data Security Incident prior to filing this lawsuit, met with and interviewed the Class Representatives, gathered and reviewed their relevant documents, served formal discovery on ACTS, and reviewed and analyzed the documents and written discovery answers ACTS provided. At the time the Settlement was consummated, Plaintiffs were just weeks away from producing their experts' reports to ACTS. All this information informed Plaintiffs' positions and negotiating strategy at the mediation.

In addition, Proposed Class Counsel has extensive experience in litigating and settling data security class actions. With the information gathered from the Class Representatives, the documents and information produced by ACTS, and based on years of experiencing handling these specific kinds of cases, Proposed Class Counsel was able to determine that the terms of the proposed Settlement are fair, reasonable, and adequate and in the best interest of the Settlement Class.

a. **The Settlement accounts for the costs, risks, and delay of trial and appeal.**

The immediate benefits that the Settlement provides stand in contrast to the risks, uncertainties, and delays of continued litigation. Plaintiffs thoroughly assessed those contingencies in considering the terms of the Settlement.

If the litigation were to continue, Plaintiffs and the Settlement Class would face a number of delays and challenges, including obtaining class certification, briefing motions for summary judgment, defending expert opinions, and maintaining class certification through trial, as well as the possibility of appeal. S*ee In re CertainTeed Fiber Cement Siding Litig*., 303 F.R.D. 199, 216 (E.D. Pa. 2014) ("[I]f the parties were to continue to litigate this case, further proceedings would be complex, expensive and lengthy, with contested issues of law and fact . . . . That a settlement would eliminate delay and expenses and provide immediate benefit to the class militates in favor of approval."); C*raig v. Rite Aid Corp*., No. 4:08-cv-2317, 2013 WL84928, at *9 (M.D. Pa. Jan. 7, 2013) (preliminarily approving settlement where "[n]ot only would continued litigation of these cases result in a massive expenditure of Class Counsel's resources, it would likewise place a substantial drain on judicial resources").

Here, the Settlement puts to rest the Data Security Incident incident and provides Class Members the opportunity to obtain meaningful cash relief, which otherwise would not be available. In addition to obtaining up to $75 for the time spent on the telephone or visiting financial institutions, Class Members are also entitled to two (2) years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product, which includes Dark Web Monitoring and can cost anywhere from $7-20 per person, per month. Assuming only 25% of the 20,754 Class Members elect to enroll in Pango's Identity Defense, at the minimum $7 per month for 2 years equates to $871,668, which is in addition to

the $350,000 available cash fund. The available benefits outweigh the cost, risk and delay with proceeding to trial and appeal.  The Settlement should be preliminarily approved.

### b. The settlement provides for an effective method of distributing relief to the class, including a straightforward claims process.

The Settlement creates a straight-forward claims procedure for Class Members, which can be easily completed and submitted online, to claim cash reimbursements for out-of-pocket expenses or losses as well as Pango's Identity Defense.  S.A., ¶4.6.  The Settlement also provides for effective notice to Class Members by direct mail, as well as a Settlement Website which contains all pertinent information about the Settlement, the Claim Form, and other important documents. *Id*., ¶5.8. Class Members need only provide a brief description of what steps they took following notice of the breach, which resulted in lost time, to receive up to $75.

### c. The proposed attorneys' fee award is reasonable

Proposed Class Counsel have devoted significant time and financial resources to the litigation despite the uncertainty of prevailing as to class certification and the merits as well as establishing damages. During the mediation, the Parties did not broach the topic of attorneys' fees until after agreeing on substantive settlement terms for the Class. The Parties agreed that any attorneys' fees awarded by the Court would be paid separate from the relief to the Class and will not exceed $250,000. Because the attorneys' fees will not diminish the settlement funds available for the Class, which favors preliminary approval of the Settlement. *See, e.g., Blackford*, 2018 WL 6604484, at *6 (holding that the "attorney's fees sought are reasonable and do not impact the class' relief"). Plaintiffs will file a motion and supporting materials requesting the Court award Proposed Class Counsel their requested attorneys' fees and costs in advance of the objection deadline and will post them on the Settlement Website so that they can be easily accessed by Class Members.

**B.      The Proposed Settlement Class Satisfies the Criteria of Rule 23(a)**

Courts may certify settlement classes that satisfy the requirements of Rule 23(a) and at least one provision of Rule 23(b). *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620-22 (1997); *Fulton-Green*, 2019 WL 316722, at *2.

The proposed Class satisfies all requirements of Rule 23(a): "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Further, as required by Rule 23(b)(3), "questions of law or fact common to class members predominate over any questions affecting only individual members," and a "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the Settlement Class should be provisionally certified, pending a final certification order after the Fairness Hearing.

### 1.   The Class Is Sufficiently Numerous.

Discovery revealed that there are 20,754 class members. Thus, the Class easily satisfies the Rule 23(a)(1) requirement that the class be "so numerous that joinder of all members is impracticable." *See Fulton-Green*, 2019 WL 316722, at *3 (proposed class of 973 people "easily meet[s] the numerosity requirement"); *Gates*, 248 F.R.D. at 439-40 (class of more than 40 potential plaintiffs generally meets numerosity requirement).

### 2.   There are Questions of Law or Fact Common to the Class.

"Rule 23(a)(2)'s commonality element requires that the proposed class members share at least one question of fact or law in common with each other." Warfarin, 391 F.3d at 527-28. The commonality threshold is low and does not require an "identity of claims or facts among class members." Gates, 248 F.R.D. at 440. "[F]or purposes of Rule 23(a)(2), even a single common

question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (internal quotation and alterations omitted).

Here, the facts relating to the Data Security Incident are the key issues in the case. There are multiple common questions, including "how the data breach occurred, whether [ACTS] had a duty to protect [cardholder information], and whether [ACTS employees and customers] were harmed by the breach." *Fulton-Green*, 2019 WL 316722, at *3. The commonality requirement has been met.

### 3. The Class Representatives Claims Are Typical of the Claims of the Class.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." This inquiry is "intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Hall*, 2019 WL 3996621, at *7. Typicality is satisfied where there is a "strong similarity of legal theories or where the claim arises from the same practice or course of conduct." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (hereinafter "NFL Players II") (internal citation omitted). Here, the claims of the Class Representatives are "not only similar to those of other class members but are virtually identical." *Fulton-Green*, 2019 WL 316722, at *4.

The Class Representatives, who were former employees of ACTS, "seek to hold [ACTS] liable for damages related to the breach and share common questions of law and fact with all other class members. Thus, their claims are typical of the class delineated for the proposed settlement." *Id.*

15

### 4. The Class Representatives and Co-Lead Counsel Will Fairly and Adequately Represent the Class.

Rule 23(a)(4) tests whether the "representative parties will fairly and adequately protect the interests of the class."

> Essentially, the inquiry into the adequacy of the representative parties examines whether the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously, that he or she has obtained adequate counsel, and that there is no conflict between the individual's claims and those asserted on behalf of the class.

*In re Imprelis Herbicide Mktg, Sales Prac. and Prods. Liability Litig.*, 296 F.R.D. 351, 361 (E.D. Pa. 2013) (Pratter, J.) (citations and internal quotation marks omitted).

Here, the named Plaintiffs have been actively involved in the litigation of this case, and each has produced documents and reviewed and approved the proposed Settlement. Their interests and those of the other Class Members are aligned: all are equally interested in proving the factual averments in the Complaint, establishing Act's liability, and obtaining compensation from ACTS. As described below, the Class Representatives have retained knowledgeable and well-qualified counsel who have successfully prosecuted many class actions, including many actions arising from data breaches. Proposed Class Counsel have vigorously prosecuted the action and have devoted substantial effort and resources on behalf of the Class.

### 5. Common Issues Predominate over any Individual Issues and a Class Action Is Superior to Other Available Methods of Adjudicating the Controversy.

In addition to satisfying the criteria under Rule 23(a), the proposed Settlement Class must meet one of the criteria under Rule 23(b). Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." The proposed Settlement Class

meets both requirements.

### a.  Common issues predominate.

As the Supreme Court has explained:

> The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and quotation

marks omitted).

Here, the many "common, aggregation-enabling" questions of law and fact include:

whether ACTS owed a duty to the Class Members to adequately protect their personal

information; whether ACTS breached that duty; whether ACTS knew or should have known that

its data systems were vulnerable to attack from cybercriminals; whether ACTS' conduct or

inaction was the proximate cause of the breach; and whether Plaintiffs and the Class are entitled

to recover damages and other relief from ACTS. In other words, ACTS liability "depend[s]

entirely upon" its own duties and actions, and not on the "particularized conduct of individual

class members." *Sullivan*, 667 F.3d at 298-300. Class Members would rely on common

documentary, testimonial, and expert evidence to prove ACTS' actions and inactions and to

establish liability. Therefore, common issues predominate. *See NFL Players II*, 821 F.3d at 427

(though plaintiffs may have unique injuries, "their negligence and fraud claims still depend on

the same common questions regarding the [defendant's] conduct"); *Warfarin,* 391 F.3d at 528

(finding commonality where liability depended on the defendant's conduct, not on conduct of

individual class members, and proof of liability "depends on evidence which is common to the class members").

### b. A class action is superior to other means of adjudication.

"The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *Processed Egg Prods.*, 284 F.R.D. at 264. Rule 23(b)(4) suggests that courts consider the following non-exhaustive list of factors when making a superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."

Here, all four considerations weigh in favor of certifying the Settlement Class. There is no indication that Class Members would be interested in litigating individually or that the litigation should proceed in a non-class forum. In addition, the cost and complexity of litigation would preclude the vast majority of Class Members from filing suit individually. The class action Settlement, in contrast, provides Class Members with an immediate monetary benefit. As this Court summarized in another data breach case:

> [A]ll of the claims are almost identical because they arise from the same underlying activity and the damages should be easily provable and quantifiable. Furthermore, the value of the individual claims may be modest and thus impractical to litigate on a case by case basis. This is particularly true for people . . . who have not suffered identity theft but have had to spend time notifying institutions and signing up for identity theft protection programs.

*Fulton-Green*, 2019 WL 316722, at *4 (preliminarily certifying Rule 23(b)(3) class).

**C.    The Notice Program Provides Class Members with the Best Notice Practicable Under the Circumstances.**

If the parties show that the "court will likely be able to: (i) approve the proposal under Rule 23(e)(2) and (ii) certify the class for purposes of judgment on the proposal," then the Court must "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. Rule 23(e)(1)(B). Pursuant to Rule 23(c)(2)(B), the notice must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."

There are three aspects to notice requirements under Rule 23 and fundamental due process: (1) notice must be disseminated in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections"; (2) the content must be of "such nature as reasonably to convey the required information"; and (3) the notice must "afford a reasonable time for those interested to make their appearance" and exercise their options to file a claim, object, or opt out of the class. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) (internal citations omitted); *see also In re Nat'l Football League Players Concussion Injury Litig*., 775 F.3d 570, 583 (3d Cir. 2014) (principal purpose of notice provision of Rule 23(e)(1) is to "ensure that absentee class members, for whom a settlement will have preclusive effect, have an opportunity to review the materials relevant to the proposed settlement and to be heard or otherwise take steps to protect their rights before the court approves or rejects the settlement") (*quoting* 2 MCLAUGHLIN ON CLASS ACTIONS § 6:17 (10th ed. 2013)). The Notice Program achieves all these objectives.

As discussed above, ACTS has mailing addresses for the Class Members, so the Settlement contemplates a direct mailing notice program using a Short Form Notice which will

direct Class Members to the Settlement Website where the Long Form Notice will be posted.  As required by Rule 23(2)(B), the proposed Long Form notice attached as Ex. B to the Settlement Agreement "clearly and concisely state[s] in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." It also describes the terms of the Settlement, including requests for service awards for the Class Representatives and for an award of attorneys' fees and reimbursement of expenses; informs Class Members about their right to object to the Settlement (and how to do so); provides the date, time, and place of the Final Approval hearing and the procedures for appearing at the hearing; and provides contact information for Co-Lead Counsel and the Settlement Administrator.

The Notice Program will inform Class Members of the deadlines for objecting to the settlement and excluding themselves from the Class. The deadlines themselves are reasonable. *See Nat'l Football League*, 301 F.R.D. at 203 ("It is well-settled that between 30 and 60 days is sufficient to allow class members to make their decisions to accept the settlement, object, or exclude themselves.").

In sum, the Notice Program warrants approval: it is direct mail, designed to reach Class Members efficiently, provides the information and time that Class Members need to protect their rights, and is the best notice practicable under the circumstances. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 175 (1974) (holding that direct mail, individual notice "is clearly the best notice

practicable within the meaning of Rule 23(c)(2) and our prior decisions.") (internal quotations omitted).

## V.  APPOINTMENT OF CLASS COUNSEL

Plaintiffs request that the Court appoint the current Proposed Class Counsel as Class Counsel for the Settlement Class. Proposed Class Counsel have vigorously represented the interests of Plaintiffs and Class Members.

Rule 23(g) sets forth the criteria for evaluating the adequacy of Plaintiffs' counsel:

> (i)      the work counsel has done in identifying or investigating potential claims in the action;

> (ii)     counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;

> (iii)    counsel's knowledge of the applicable law; and

> (iv)     the resources that counsel will commit to representing the class.

Fed. R. Civ. P. 23(g)(1)(A). Proposed Class Counsel identified and investigated the potential claims.  Filed suit, opposed ACTS' Rule 12(b)(6) motion, including participating in oral argument before the Court, served written discovery and reviewed and followed-up on ACTS' responses and document production. In addition, Proposed Class Counsel negotiated the subject Settlement, which, based on their collective experience, believe to be fair, reasonable, and adequate, and in the best interest of the Class. Proposed Class Counsel has settled numerous class actions in their respective careers, and in particular, data breach class actions. Exhibit 2 (Proposed Class Counsel Firm's Resumes). Proposed Class Counsel has funded the litigation since its outset and would have continued to do so had a settlement not been reached. Proposed Class Counsel request the Court appoint them as Class Counsel pursuant to Rule 23(g)(1)(A).

## VI.  SCHEDULE FOR FINALIZING THE SETTLEMENT

Plaintiffs request that the Court establish dates for disseminating notice to the Settlement Class, deadlines for requests for exclusion or objections, dates for filing papers relating to final settlement approval and attorneys' fees, and a date for the Final Approval Hearing. Plaintiffs propose the following schedule as set forth in the Settlement Agreement and proposed preliminary approval Order:

| Event | Time for Compliance |
|---|---|
| Notice Issuance Date and Launch of Settlement Website | 30 days after entry of Preliminary Approval Order |
| Deadline for Class Counsel's Application for Attorneys' Fees, Expenses, and Service Awards | 90 days after entry of Preliminary Approval Order |
| Opt-Out and Objection Deadline | 105 days after entry of Preliminary Approval Order |
| Claims Deadline | 120 days after entry of Preliminary Approval Order |
| Deadline for Motion in Support of Final Approval of Settlement | 120 days after entry of Preliminary Approval Order |
| Final Approval Hearing | No earlier than 150 days after entry of Preliminary Approval Order |

## VII.  CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court: (1) grant preliminary approval to the Settlement; (2) provisionally certify for settlement purposes only the proposed Settlement Class, pursuant to Rules 23(b)(3) and 23(e) of the Federal Rules of Civil Procedure; (3) approve the proposed Notice Program; (4) approve, set deadlines for, and order the opt out and objection procedures set forth in the Settlement Agreement; (5) appoint Plaintiffs as Class Representatives; (6) appoint as Class Counsel Raina Borrelli of Turke & Strauss, LLP and Patrick Howard of Saltz, Mongeluzzi, & Bendesky, P.C.; and (7) schedule a Fairness Hearing in accordance with the proposed schedule set forth above. A proposed Preliminary Approval Order is being filed herewith.

Dated:  July 17, 2023          By: */s/ Patrick Howard*

Patrick Howard, Esq. (Atty. ID #88572)
**SALTZ MONGELUZZI & BENDESKY, PC**
1650 Market Street, 52nd Floor
One Liberty Place
Philadelphia, PA  19103
Telephone:  215-575-3895
Facsimile:  215-754-4443
phoward@smbb.com

Samuel J. Strauss
Raina C. Borrelli
Brittany Resch
**TURKE & STRAUSS LLP**
613 Williamson St., Suite 201
Madison, WI 53703
Telephone (608) 237-1775
Facsimile: (608) 509-4423
sam@turkestrauss.com
raina@turkestrauss.com
brittanyr@turkestrauss.com

*Attorneys for Plaintiffs and the Proposed Class*