# EXHIBIT A

**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARA-AIMEE LONG CORRA and VALARIE HANNA, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>ACTS RETIREMENT SERVICES, INC.<br><br>    Defendant. | Case No. 2:22-cv-02917-GEKP |

<u>**AMENDED SETTLEMENT AGREEMENT**</u>

This Settlement Agreement is entered into by and between Cara-Aimee Long Corra and Valarie Hanna ("Plaintiffs"), individually and on behalf of the Settlement Class (as defined below), by and through Settlement Class Counsel (as defined below), and Defendant ACTS Retirement Services, Inc. ("ACTS"), in order to effect a full and final settlement and dismissal with prejudice of all claims against ACTS alleged in the above-captioned litigation on the terms set forth below and to the full extent reflected herein. Plaintiffs and ACTS are referred to collectively herein as the "Parties" and individually as a "Party."

**I.     RECITALS**

**1.     The Litigation.**

In approximately April 2022, ACTS experienced a cybersecurity attack that potentially exposed the personally identifiable information ("PII"), including but not limited to names, Social Security numbers, and financial account and routing numbers (the "Data Security Incident"), of a number of individuals, including some of its current and former employees. ACTS began notifying Plaintiffs and the Settlement Class about the Data Security Incident in approximately July 2022.

On July 26, 2022, Plaintiff Corra, individually and on behalf of a putative class, filed an action against ACTS in the U.S. District Court for the Eastern District of Pennsylvania, *Corra v.*

*Acts Retirement Services, Inc.*, Case No. 2:22-cv-02917-GEKP. On October 12, 2022, Plaintiff Corra and a second Plaintiff, Valarie Hanna, filed an Amended Complaint, alleging claims arising from the Data Security Incident. Specifically, Plaintiffs asserted six causes of action against ACTS: (i) negligence; (ii) negligence *per se*; (iii) breach of confidence; (iv) breach of implied contract, (v) unjust enrichment, and (vi) publicity given to private life. ACTS moved to dismiss Plaintiffs' Amended Complaint and that motion was fully briefed as of the time the Parties reached this Settlement. Additionally, the Parties engaged in written discovery and document production.

On May 31, 2023, the Parties engaged in mediation with Judge Wayne Andersen (Ret.) of JAMS. During that full-day mediation, the Parties were able to reach the principal terms of a settlement with the assistance of Judge Andersen, subject to final mutual agreement on all necessary documentation.

**2.    Claims of Plaintiffs and Benefits of Settling.**

Plaintiffs believe that the claims asserted in the Lawsuit (as defined below), as set forth in the Complaint (as defined below), have merit. Plaintiffs and Settlement Class Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Lawsuit against ACTS through motion practice, trial, and potential appeals. They have also taken into account the uncertain outcome and risk of further litigation, as well as the difficulties and delays inherent in such litigation. Settlement Class Counsel are experienced in class action litigation and knowledgeable regarding the relevant claims, remedies, and defenses at issue generally in such litigation and in this Lawsuit. They have determined that the Settlement set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

**3.    Denial of Wrongdoing and Liability.**

ACTS denies each and all of the claims and contentions alleged against it in the Lawsuit.

ACTS denies all allegations of wrongdoing or liability as alleged, or which could be alleged, in the Lawsuit. Nonetheless, ACTS has concluded that further defense of the Lawsuit would be protracted and expensive, and that it is desirable that the Lawsuit be fully and finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement. ACTS has taken into account the uncertainty and risks inherent in any litigation. ACTS has, therefore, determined that it is desirable and beneficial that the Lawsuit be settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

## II.    TERMS OF SETTLEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED, by and among Plaintiffs, individually and on behalf of the Settlement Class, Settlement Class Counsel, and ACTS that, subject to the approval of the Court, the Lawsuit and the Released Claims (as defined below) shall be finally and fully compromised, settled, and released, and the Lawsuit shall be dismissed with prejudice as to the Parties, the Settlement Class, and the Settlement Class Members, except those Settlement Class Members who lawfully opt out of the Settlement Agreement, upon and subject to the terms and conditions of this Settlement Agreement, as follows:

### 1.    DEFINITIONS.

As used in this Settlement Agreement and its exhibits, the following terms have the meanings specified below:

1.1    *"Claims Administration"* means providing notice of the settlement to Settlement Class Members and governmental entities, if any, required to be provided notice, the processing of claims, requests for exclusions, and objections, and payment of approved claims received from Settlement Class Members by the Claims Administrator.

3

1.2     *"Claims Administrator"* means Angeion Group or another company experienced in administering class action claims generally and specifically those of the type provided for and made in Lawsuit, if jointly agreed upon by the parties and approved by the Court.

1.3     *"Claim Deadline"* means a date certain, which is to be set forth in the Notice and which shall be no more than ninety (90) Days from the date Notice is mailed to Settlement Class Members.

1.4     *"Claim Form"* means the form, attached as **Exhibit C** to this Settlement Agreement, which Settlement Class Members must complete and submit on or before the Claim Deadline in order to be eligible for the benefits described herein. The Claim Form shall require an actual or electronic sworn signature but shall not require a notarization or any other form of verification.

1.5     *"Complaint"* means the Amended Class Action Complaint filed by Plaintiffs in the Lawsuit.

1.6     *"Court"* means the United States District Court for the Eastern District of Pennsylvania.

1.7     *"Data Security Incident"* means the cyberattack incident allegedly involving Plaintiffs' and Settlement Class Members' Private Information that occurred in April 2022.

1.8     *"Days"* means calendar days, except, when computing any period of time prescribed or allowed by this Settlement Agreement, it does not include the day of the act, event, or default from which the designated period of time begins to run. Further, when computing any period of time prescribed or allowed by this Settlement Agreement, include the last day of the period, unless it is a Saturday, a Sunday, or a federal legal holiday, in which event the period runs until the end of the next day that is not a Saturday, Sunday, or federal legal holiday.

1.9    *"Effective Date"* means the date defined in Paragraph 14.1 of this Settlement Agreement.

1.10    *"Final"* means that all of the following events have occurred: (a) the Settlement pursuant to this Settlement Agreement is approved by the Court; (b) the Court has entered the Final Order and Judgment; and (c) either (i) no appeal has been taken from the Final Order and Judgment as of the date on which all times to appeal or seek permission to appeal therefrom have expired, or (ii) if an appeal or other review proceeding of the Final Order and Judgment has been commenced, such appeal or other review is finally concluded and no longer is subject to further review by any court, whether by appeal, petitions, rehearing or re-argument, petitions for rehearing *en banc*, petitions for writ of *certiorari*, or otherwise, and such appeal or other review has been finally resolved in a manner that affirms the Final Order and Judgment in all material respects. Notwithstanding the above, any order modifying or reversing any Service Award or award of attorneys' fees or expenses shall not affect whether a judgment in this matter is Final or any other aspect of the judgment.

1.11    *"Final Approval Hearing"* means the hearing in the Lawsuit at which the Court considers final approval of this Settlement and the entry of the Final Order and Judgment.

1.12    *"Final Order and Judgment"* means the final judgment and order of dismissal with prejudice to be entered in the Lawsuit in connection with the approval of the Settlement after the Final Approval Hearing.

1.13    *"Lawsuit"* means the lawsuit, styled *Corra et al. v. Acts Retirement Services, Inc.*, Case No. 2:22-cv-02917-GEKP, pending in the United States District Court for the Eastern District of Pennsylvania.

5

1.14   *"Notice"* means the written notice to be sent or published to Settlement Class Members pursuant to the Preliminary Approval Order, attached as **Exhibits A and B** to this Settlement Agreement.

1.15   *"Notice and Claims Administration Costs"* means actual costs associated with or arising from providing notice to Settlement Class Members and performing Claims Administration in connection with the Settlement.

1.16   *"Notice Deadline"* means within thirty (30) Days of the entry of the Preliminary Approval Order, by which time the Claims Administrator shall send the Notice in **Exhibit A** to all Settlement Class Members whose addresses are known to ACTS.

1.17   *"Notice Program"* means the notice program described in Section 5.

1.18   *"Objection Deadline"* means the time period in which a Settlement Class Member may submit an Objection, which is sixty (60) Days after the Notice Deadline.

1.19   *"Opt-Out Period"* means the time period ordered by the Court during which a Settlement Class Member may submit an Opt-Out Request to opt out of the benefits available under the Settlement Agreement and also not be bound by the Settlement Agreement. The Parties will recommend to the Court that this period be the sixty (60) Day period beginning from the Notice Deadline.

1.20   *"Opt-Out Request"* means a written request a Settlement Class Member may submit to the Claims Administrator as detailed under Section 6 below if he or she wants to be excluded from the Settlement Class and not be bound by the Settlement Agreement.

1.21   *"Parties"* means Plaintiffs, individually and on behalf of the Settlement Class, and Defendant ACTS Retirement Services, Inc.

1.22   *"Person"* means an individual.

6

1.23    "*Private Information*" shall mean "*Personal Identifiable Information*" and "*PII*" and includes, but is not limited to, Social Security numbers and financial account information and routing numbers.

1.24    "*Plaintiffs*" means Cara-Aimee Long Corra and Valarie Hanna.

1.25    "*Preliminary Approval Date*" means the date on which the Preliminary Approval Order has been entered by the Court.

1.26    "*Preliminary Approval Order*" means the order preliminarily approving the Settlement and providing for Notice to the Settlement Class, attached as **Exhibit D** to this Settlement Agreement.

1.27    "*Related Entities*" means ACTS' past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of ACTS' respective predecessors, successors, directors, officers, shareholders, employees, principals, agents, attorneys, insurers, and reinsurers, and includes, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in the Lawsuit, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, or aiding or abetting the criminal activity associated with the Data Security Incident or who pleads *nolo contendere* to any such charge.

1.28    "*Released Claims*" means any and all past, present, and future liabilities, rights, claims, counterclaims, actions, causes of action, demands, damages, penalties, costs, attorneys' fees, losses, and remedies, whether known or unknown, existing or potential, suspected or unsuspected, liquidated or unliquidated, legal, statutory, or equitable, that result from, arise out of, are based upon, including, but not limited to, negligence, negligence *per se*, breach of confidence, breach of implied contract, unjust enrichment, publicity given to private life, any state or federal

7

consumer protection statute, misrepresentation (whether fraudulent, negligent, or innocent), bailment, wantonness, failure to provide adequate notice pursuant to any breach notification statute, regulation, or common law duty, and any causes of action under 18 U.S.C. §§ 2701 *et seq.*, and all similar statutes in effect in any states in the United States as defined herein, and including, but not limited to, any and all claims for damages, injunctive relief, disgorgement, declaratory relief, equitable relief, attorneys' fees, costs and expenses, set-offs, losses, pre-judgment interest, credit monitoring services, the creation of a fund for future damages, statutory damages, punitive damages, special damages, exemplary damages, restitution, the appointment of a receiver, and any other form of relief that either has been asserted, or could have been asserted, or relate to the exposure of Private Information in the Data Security Incident, and conduct that was alleged or could have been alleged in the Lawsuit, including, without limitation, any claims, actions, causes of action, demands, damages, penalties, losses, or remedies relating to, based upon, resulting from, or arising out of the disclosure of Private Information (the "Released Claims"), provided that nothing in this Release is intended to, does or shall be deemed to release any claims not arising out of, based upon, resulting from, or related to the Data Security Incident.

1.29    *"Released Persons"* means ACTS, the Related Entities, and each of their past or present parents, subsidiaries, divisions, and related or affiliated entities, and each of their respective predecessors, successors, assigns, owners, directors, shareholders, members, officers, employees, principals, agents, representatives, attorneys, insurers, and reinsurers.

1.30    *"Service Award"* means compensation awarded by the Court and paid to the Settlement Class Representatives in recognition of their roles in this litigation.

1.31    *"Settlement"* means the settlement of the Lawsuit upon the terms and conditions set forth in this Settlement Agreement.

1.32    *"Settlement Agreement"* means this Settlement Agreement, including all exhibits hereto.

1.33    *"Settlement Class"* means: All persons whose personal identifying information and/or protected health information was potentially compromised in the Data Security Incident that occurred in April 2022, and who received notice from ACTS of that Data Security Incident. Excluded from the Settlement Class are: (i) ACTS; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge.

1.34    *"Settlement Class Counsel"* shall mean Raina Borrelli of Turke & Strauss LLP and Patrick Howard of Saltz Mongeluzzi Bendesky P.C.

1.35    *"Settlement Class Member[s]"* means all persons who fall within the definition of the Settlement Class.

1.36    *"Settlement Class Representatives"* means Cara-Aimee Long Corra and Valarie Hanna.

1.37    *"Settlement Website"* means a dedicated website created and maintained by the Claims Administrator, which will contain relevant documents and information about the Settlement, including this Settlement Agreement, Notice, and Claim Form, among other things.

1.38    *"United States"* includes all fifty (50) states, the District of Columbia, and all territories.

1.39    *"ACTS"* means ACTS Retirement Services, Inc.

9

1.40     "*ACTS' Counsel*" means Mullen Coughlin LLC and its attorneys.

## 2.     CLASS CERTIFICATION

2.1     Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, ACTS agrees to stipulate to the certification of the Settlement Class and will not oppose Plaintiffs' request for certification.

2.2     Solely for the purpose of implementing this Settlement Agreement and effectuating the Settlement, ACTS stipulates that Plaintiffs are adequate representatives of the Settlement Class, and that Settlement Class Counsel are adequate counsel for the Settlement Class.

2.3     If the Settlement set forth in this Settlement Agreement is not approved by the Court, or if the Settlement Agreement is terminated or cancelled pursuant to the terms of this Settlement Agreement, this Settlement Agreement, and the certification of the Settlement Class provided for herein, shall be vacated, and the Lawsuit shall proceed as though the Settlement Class had never been certified, without prejudice to any Person's or Party's position on the issue of class certification or any other issue. The Parties' agreement to the certification of the Settlement Class is also without prejudice to any position asserted by the Parties in any other proceeding, case, or action, as to which all of their rights are specifically preserved. In the event of non-approval, termination, or cancellation of this Settlement Agreement, ACTS shall be responsible for administration and notification costs incurred, if any, but shall have no other payment, reimbursement, or other financial obligation of any kind as a result of this Settlement Agreement.

## 3.     SETTLEMENT BENEFITS.

Subject to the terms of this Settlement Agreement, ACTS shall make available the following compensation to Settlement Class Members who do not timely and validly opt-out of participation in this Settlement:

3.1     <u>Monetary Compensation for Losses</u>: Settlement Class Members who submit a valid and timely Claim Form may choose all applicable claim categories below. The overall compensation cap for any individual claimant is $350.00 for all amounts claimed in Claim A and $3,500.00 for all amounts claimed in Claim B. Claims will be subject to review for completeness and plausibility by the Claims Administrator.

(a)     <u>Claim A</u>: <u>Compensation for Ordinary Losses.</u> Defendant will reimburse documented out-of-pocket expenses incurred as a result of the Data Security Incident, up to a maximum of $350 per person upon submission of a claim and supporting third-party documentation, such as the following losses:

(i)     Bank fees, long distance phone charges, cell phone charges (only if charged by the minute), data charges (only if charged based on the amount of data used), postage, or gasoline for local travel;

(ii)     Fees for credit reports, credit monitoring, or other identity theft insurance product purchased between April 29, 2022, and the date of the Settlement Agreement;

(iii)     Compensation for up to three (3) hours at $25 per hour for a maximum of up to $75 per person. Class members may submit claims for up to three (3) hours of lost time with an attestation that they spent the claimed time responding to issues raised by the Data Security Incident and identification of how the time was spent. This payment shall be included in the per person cap for Compensation for Ordinary Losses.

(iv)     This list of reimbursable documented out-of-pocket expenses is not meant to be exhaustive, rather it is exemplary. Settlement

11

Class Members may make claims for any documented out-of-pocket losses reasonably related to the Data Security Incident or to mitigating the effects of the Data Security Incident. The Claims Administrator shall have discretion to determine whether any claimed loss is reasonably related to the Data Security Incident.

(b)     Claim B: Compensation for Extraordinary Losses. Defendant will provide up to a maximum of $3,500 in compensation to each claimant who was the victim of actual documented identity theft for proven monetary loss if:

(i)     The loss is an actual, documented, and unreimbursed monetary loss arising from identity theft, fraud, or similar misuse, supported by third-party documentation;

(ii)     The loss was more likely than not caused by the Data Security Incident;

(iii)     The loss occurred between April 29, 2022, and the date of the Settlement Agreement;

(iv)     The loss is not already covered by one or more of the normal reimbursement categories; and the Settlement Class Member made reasonable efforts to avoid, or seek reimbursement for, the loss, including but not limited to exhaustion of all available credit monitoring insurance and identity theft insurance.

3.2     Monetary Claims Cap. The maximum amount to be paid by Acts is capped at no more than $350,000 for Claim A and Claim B. The Credit Monitoring is not subject to this cap. Payments to Settlement Class Members who make valid claims under Claims A and B shall be

12

reduced on a *pro rata* basis based on the number of claims made if the total exceeds the overall $350,000.00 aggregate cap.

      3.3     Credit Monitoring Services. Settlement Class Members shall be offered an opportunity to enroll in two (2) years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product.

      3.4     Remedial Measures. Defendant has made certain security changes in response to the Data Security Incident and the Lawsuit. Specifically, ACTS changed passwords and strengthened password requirements, extended multi-factor authentication, implemented new technical safeguards and additional mobile device management controls, updated data retention approaches, trained and/or retrained workforce members, added as 24/7 Managed Detection and Response service to augment internal resources and protections, implemented Microsoft's full lifecycle data compliance and governance solutions, and removed archival data from on-premises servers and further restricted access to archival data. ACTS agrees to pay for such ongoing security changes separate and apart from other settlement benefits.

      3.5     Claims Period. The Parties agree that the period for submitting claims will be set at a date certain no more than ninety (90) Days from the date that Notice is mailed to the Settlement Class Members.

      3.6     Attorneys' Fees. ACTS agrees not to object to an application by Settlement Class Counsel requesting the Court award attorneys' fees and costs in an amount not to exceed two-hundred fifty-thousand and no/100 dollars ($250,000.00), which are to be paid separate and apart from any other sums agreed to under this Settlement Agreement and which are not included in the maximum claims cap.

3.7     Service Awards. ACTS also agrees not to object to an application by Settlement Class Counsel requesting the Court award a Service Award to each Plaintiff in an amount not to exceed two thousand and five hundred and no/100 dollars ($2,500.00), or five thousand and no/100 dollars ($5,000) total, which is to be paid separate and apart from any other sums agreed to under this Settlement Agreement.

3.8     The Claims Administrator will provide information to ACTS regarding approved claims, including the claimant's name and other relevant information and all documentation to substantiate the claim upon request. ACTS shall have up to five (5) business Days after being provided this information to dispute any approved claim.

3.9     If a Settlement Class Member disputes in writing a claim determination related to a claim under Paragraph 3.1 and requests an appeal, the Parties will meet and confer on the appeal. If the Parties are unable to reach an agreement on how to resolve the appeal, The Honorable Judge Gene E.K. Pratter or her designee will serve as the Claims Referee to make a final and binding determination regarding the disputed claim by a Settlement Class Member.

3.10    The entire Settlement is subject to court approval. The Effective Date for the Settlement will be when the time for appeal of the Final Order and Judgment granting final approval have lapsed with no appeal having been filed or, if any appeal is filed, thirty Days after an appeal is finally resolved with an affirmance of the Final Order and Judgment granting final approval.

**4.      SETTLEMENT ADMINISTRATION.**

4.1     All Notice and Claims Administration Costs will be paid by ACTS.

4.2     The Parties have agreed to request that the Court appoint Angeion Group as Claims Administrator. Once approved by the Court, the Claims Administrator will be an agent of the Court and will be subject to the Court's supervision and direction as circumstances may require.

4.3     The Claims Administrator will cause the Notice Program to be effectuated in accordance with the terms of this Settlement Agreement and any orders of the Court. The Claims Administrator may request the assistance of the Parties to facilitate providing notice and to accomplish such other purposes as may be approved by ACTS' Counsel and Settlement Class Counsel. The Parties shall reasonably cooperate with such requests.

4.4     The Claims Administrator will administer and update the Settlement Website in accordance with the terms of this Settlement Agreement. Settlement Class Counsel and ACTS' Counsel shall agree on all information and documents to be posted on the Settlement Website.

4.5     The Claims Administrator will conduct Claims Administration in accordance with the terms of the Settlement Agreement, and any additional processes agreed to by Settlement Class Counsel and ACTS' Counsel, and subject to the Court's supervision and direction as circumstances may require.

4.6     To make a claim for monetary compensation, a Settlement Class Member must complete and submit a valid, timely Claim Form. Claim Forms shall be submitted by U.S. mail or electronically through the Settlement Website and must be postmarked or submitted no later than the Claim Deadline.

4.7     The Claims Administrator will review and evaluate each Claim Form, including any required documentation submitted for timeliness, completeness, and validity.

4.8     The Claims Administrator, in its sole discretion to be reasonably exercised, will determine whether: (1) the claimant is a Settlement Class Member; (2) the claimant has provided all third-party documentation (except for claims for lost time) or information needed to complete the Claim Form, including any documentation required to support claims for compensation under Paragraph 3.1 above; and (3) when applicable, the information submitted could lead a reasonable

person to conclude that the claimant is eligible for the category and/or amount for which a claim is submitted (collectively, "Facially Valid"). The Claims Administrator may, at any time, request from the claimant, in writing, additional information ("Claim Supplementation") as the Claims Administrator may reasonably require in order to evaluate the claim, *e.g.*, documentation requested on the Claim Form, information regarding the claimed losses, available insurance or other sources of reimbursement, the status of any claims made for insurance benefits or other reimbursement, and claims previously made for identity theft and the resolution thereof.

4.9     The Claims Administrator will maintain records of all Claim Forms submitted until the later of (a) one hundred and eighty (180) Days after the Effective Date or (b) the date all Claim Forms have been fully processed. Claim Forms and supporting documentation may be provided to the Court upon request and to Settlement Class Counsel and/or ACTS' Counsel to the extent requested or necessary to resolve Claims Administration issues pursuant to this Settlement Agreement. ACTS or the Claims Administrator will provide other reports or information as requested by the Court.

4.10     Subject to the terms and conditions of this Settlement Agreement, ACTS shall transmit needed claimant compensation funds to the Claims Administrator, and the Claims Administrator shall mail or otherwise provide payment for approved claims within sixty (60) Days of the Effective Date, or within sixty (60) Days of the date that the Claim is approved, whichever is later.

4.11     Payment for approved Claims shall be mailed or otherwise sent to the Settlement Class Member in the manner indicated on his or her Claim Form.

4.12     Any checks issued under this section shall be void if not negotiated within ninety (90) Days of their date of issue and shall bear the language: "This check must be cashed within 90

days, after which time it is void." Checks issued pursuant to this section that are not negotiated within ninety (90) Days of their date of issue shall not be reissued. If a Settlement Class Member fails to cash a check issued under this section before it becomes void, the Settlement Class Member will have failed to meet a condition precedent to recovery of settlement benefits, the Settlement Class Member's right to receive monetary relief under the Settlement shall be extinguished, and ACTS shall have no obligation to make payments to the Settlement Class Member for compensation or loss reimbursement under Paragraph 3.1 or to make any other type of monetary relief to the Settlement Class Member. Such Settlement Class Member remains bound by all terms of the Settlement Agreement.

4.13    The Settlement funds and benefits that ACTS shall create or provide will not be subject to any non-claim statutes or any possible rights of forfeiture or escheat.  All monies that might be paid are not vested, contingently due, or otherwise monies in which a Settlement Class Member has an enforceable right and shall remain the property of ACTS until all conditions for payment have been met. No interest shall accrue or be payable in connection with any payment due under this Settlement Agreement.

4.14    Information submitted by Settlement Class Members in connection with submitted claims for benefits under this Settlement Agreement shall be deemed confidential and protected as such by the Claims Administrator, Settlement Class Counsel, and ACTS' Counsel.

**5.      NOTICE TO SETTLEMENT CLASS MEMBERS.**

5.1     The Parties agree that the following Notice Program provides reasonable notice to the Settlement Class.

5.2     Notice shall be provided to Settlement Class Members via: (1) direct notice; and (2) notice on the Settlement Website.

5.3     Within fourteen (14) Days of the entry of the Preliminary Approval Order and engagement of a Claims Administrator, ACTS shall provide the Claims Administrator with the names and mailing addresses of the Settlement Class Members whose mailing addresses are known to ACTS. The Claims Administrator shall, by using the National Change of Address ("NCOA") database maintained by the United States Postal Service ("Postal Service"), obtain updates, if any, to the mailing addresses.

5.4     Within thirty (30) Days of the entry of the Preliminary Approval Order (the "Notice Deadline"), the Claims Administrator shall send the Notice in **Exhibit A** to all Settlement Class Members whose addresses are known to ACTS by first-class U.S. mail.

5.5     If any Notice is returned by the Postal Service as undeliverable, the Claims Administrator shall remail the Notice to the forwarding address, if any, provided by the Postal Service on the face of the returned mail. Where the undeliverable Notice is returned without a forwarding address, the Claims Administrator shall make reasonable efforts to ascertain the correct address of the Settlement Class Member whose Notice was returned undeliverable and remail the Notice. Other than as set forth in the preceding sentence, neither the Parties nor the Claims Administrator shall have any obligation to remail a Notice to a Settlement Class Member.

5.6     The Notice mailed to Settlement Class Members will consist of a Short Form Notice in a form substantially similar to that attached hereto as **Exhibit A**. The Claims Administrator shall have discretion to format the Short Form Notice in a reasonable manner to minimize mailing and administrative costs. Before Notices are mailed, Settlement Class Counsel and ACTS' Counsel shall first be provided with a proof copy (reflecting what the items will look like in their final form) and shall have the right to inspect the same for compliance with the Settlement Agreement and any orders of the Court.

5.7    No later than thirty (30) Days following entry of the Preliminary Approval Order and engagement of a Claims Administrator, and prior to the mailing of the Notice to Settlement Class Members, the Claims Administrator will create a dedicated Settlement Website. The Claims Administrator shall cause the Complaint, the Short Form Notice, the Long Form Notice (substantially similar to that attached hereto as **Exhibit B**, and the Claim Form (in a form substantially similar to that attached hereto as **Exhibit C**), as approved by the Court, as well as this Settlement Agreement, to be made available on the Settlement Website. Any other content proposed to be included or displayed on the Settlement Website shall be approved in advance by Settlement Class Counsel and ACTS' Counsel, which approval shall not be unreasonably withheld. The Settlement Website address and the fact that the Long Form Notice and a Claim Form are available through the Settlement Website shall be included in the Notice mailed to Settlement Class Members.

5.8    The Settlement Website shall be maintained and updated until thirty (30) Days after Final Order and Judgment.

5.9    Claim Forms shall be returned or submitted to the Claims Administrator via U.S. mail or submitted through the Settlement Website by the Claim Deadline set by the Court or be forever barred.

5.10    Prior to the Final Approval Hearing, the Claims Administrator shall provide to Settlement Class Counsel and ACTS' Counsel to file with the Court an appropriate affidavit or declaration from the Claims Administrator with respect to its compliance with the Court-approved Notice Program.

5.11    ACTS shall pay the entirety of the costs of Claims Administration and the costs of providing notice to the Settlement Class in accordance with the Preliminary Approval Order.

19

6.      **OPT-OUT PROCEDURE.**

6.1     Each Settlement Class Member shall have the right to opt out and not participate in the Settlement Agreement, as provided for in the Preliminary Approval Order.

6.2     The Notice shall inform each Settlement Class Member of his or her right to request exclusion from the Settlement Class and not to be bound by this Settlement Agreement, if, within such time as is ordered by the Court ("Opt-Out Period"), the Settlement Class Member personally signs and timely submits, completes, and mails a request for exclusion ("Opt-Out Request") to the Claims Administrator at the address set forth in the Notice. To be effective, an Opt-Out Request must be postmarked no later than the final date of the Opt-Out Period.

6.3     The Parties will recommend to the Court that the Opt-Out Period be the sixty (60)-day period beginning upon the Notice Deadline.

6.4     For a Settlement Class Member's Opt-Out Request to be valid, it must (a) state his or her full name, address, and telephone number; (b) contain the Settlement Class Member's personal and original signature (or the original signature of a person previously authorized by law, such as a trustee, guardian, or person acting under a power of attorney to act on behalf of the Settlement Class Member with respect to a claim or right, such as those in the Lawsuit); and (c) clearly manifest the Settlement Class Member's intent to be excluded from the Settlement Class, to be excluded from the Settlement, to not participate in the Settlement, and/or to waive all rights to the benefits of the Settlement. The Claims Administrator shall promptly inform Settlement Class Counsel and ACTS' Counsel of any Opt-Out Requests.

6.5     All Settlement Class Members who submit timely and valid Opt-Out Requests in the manner set forth in Paragraph 6.4, above, referred to herein as "Opt-Outs," shall receive no benefits or compensation under this Settlement Agreement, shall gain no rights from the Settlement Agreement, shall not be bound by the Settlement Agreement, and shall have no right

to object to the Settlement or proposed Settlement Agreement or to participate at the Final Approval Hearing. All Settlement Class Members who do not request to be excluded from the Settlement Class in the manner set forth in Paragraph 6.4, above, shall be bound by the terms of this Settlement Agreement, including the Release contained herein, and any judgment entered thereon, regardless of whether he or she files a Claim Form or receives any monetary benefits from the Settlement.

6.6     An Opt-Out Request or other request for exclusion that does not fully comply with the requirements set forth in Paragraph 6.4, above, or that is not timely submitted or postmarked, or that is sent to an address other than that set forth in the Notice, shall be invalid, and the person submitting such request shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and any judgment entered thereon.

6.7     No person shall purport to exercise any exclusion rights of any other person, or purport (a) to opt out Settlement Class Members as a group, in the aggregate, or as a class involving more than one Settlement Class Member; or (b) to opt out more than one Settlement Class Member on a single paper, or as an agent or representative. Any such purported Opt-Out Requests shall be void, and the Settlement Class Member(s) who is or are the subject of such purported Opt-Out Requests shall be treated as a Settlement Class Member and be bound by this Settlement Agreement, including the Release contained herein, and judgment entered thereon, unless he or she submits a valid and timely Opt-Out Request.

6.8     Within fourteen (14) Days after the last Day of the Opt-Out Period, the Claims Administrator shall furnish to Settlement Class Counsel and to ACTS' Counsel a complete list of all timely and valid Opt-Out Requests (the "Opt-Out List").

7.    **OBJECTIONS TO THE SETTLEMENT.**

7.1     Any Settlement Class Member who wishes to object to the Settlement Agreement must submit a timely and valid written notice of his or her objection ("Objection") by the Objection Deadline (as defined herein). Such notice shall: (i) state the objecting Settlement Class Member's full name, current address, telephone number, and email address (if any); (ii) contain the objecting Settlement Class Member's original signature; (iii) set forth information identifying the objector as a Settlement Class Member, including proof that the objector is within the Settlement Class (*e.g.,* copy of the Notice or copy of original notice of the Data Security Incident); (iv) set forth a statement of all grounds for the objection, including any legal support for the objection that the objector believes applicable; (v) identify all counsel representing the objector; (vi) state whether the objector and/or his or her counsel will appear at the Final Approval Hearing, and; (vii) contain the signature of the objector's duly authorized attorney or other duly authorized representative (if any), along with documentation setting forth such representation.

7.2     To be timely, an Objection in the appropriate form must be filed with the Clerk of the Court and mailed or hand-delivered concurrently upon Settlement Class Counsel and ACTS' Counsel at addresses set forth in the Notice no later than sixty (60) Days after the Notice Deadline ("Objection Deadline"). The deadline for filing Objections shall be included in the Notice.

7.3     An objector is not required to attend the Final Approval Hearing. If an objecting Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel, he or she must also file with the Court, and mail or hand-deliver to Settlement Class Counsel and ACTS' Counsel, a notice of appearance no later than sixty (60) Days after the Notice Deadline.

7.4     If the objecting Settlement Class Member intends to appear at the Final Approval Hearing through counsel, the notice of appearance filed with the Court must also identify the

attorney(s) representing the objector who will appear at the Final Approval Hearing and include each such attorney's name, address, phone number, email address, state bar(s) to which counsel is admitted, as well as associated state bar numbers, and a list identifying all objections such counsel has filed to class action settlements in the past three (3) years, the results of each objection, any court opinions ruling on the objections, and any sanctions issued by a court in connection with objections filed by such attorney.

7.5     If the objecting Settlement Class Member intends to request permission from the Court to call witnesses at the Final Approval Hearing, the objecting Settlement Class Member must provide a list of any such witnesses together with a brief summary of each witness's expected testimony at least thirty (30) Days before the Final Approval Hearing.

7.6     Any Settlement Class Member who fails to comply in full with the requirements for objecting set forth in this Settlement Agreement, the Notice, and any applicable orders of the Court shall forever waive and forfeit any and all rights he or she may have to raise any Objection to the Settlement Agreement, shall not be permitted to object to the approval of the Settlement at the Final Approval Hearing, shall be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by appeal or other means, and shall be bound by the Settlement Agreement and by all proceedings, orders, and judgments in the Action. The exclusive means for any challenge to the Settlement Agreement shall be through the provisions set forth in this Section. Without limiting the foregoing, any challenge to the Settlement Agreement, the Final Order and Judgment approving this Settlement Agreement, or the Judgment to be entered upon final approval shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack. Any objecting Settlement Class Member who appeals final approval of the Settlement Agreement will be required to post an appeal bond.

**8.     ATTORNEYS' FEES AND EXPENSES AND SERVICE AWARD.**

8.1     ACTS has agreed not to object to a Service Award to be paid to both Plaintiffs in an amount not to exceed two thousand and five hundred dollars and no/100 ($2,500.00), which award is intended to recognize Plaintiffs for their efforts in the litigation and commitment on behalf of the Settlement Class. Plaintiffs will not request Service Awards exceeding two thousand dollars and five hundred and no/100 ($2,500.00) per Plaintiff. If approved by the Court, ACTS will pay the Service Award to an account established by Settlement Class Counsel no later than twenty-one (21) Days after the Effective Date. The Service Award will be paid by ACTS separate and apart from any other sums agreed to under this Settlement Agreement.

8.2     ACTS has agreed not to object to an award of attorneys' fees and costs in an amount not to exceed two-hundred and fifty thousand dollars and no/100 ($250,000.00) to Settlement Class Counsel. Settlement Class Counsel will not request an award of attorneys' fees and costs exceeding two-hundred and fifty thousand dollars and no/100 ($250,000.00). If approved by the Court, Settlement Class Counsel will provide ACTS with all appropriate documentation required under applicable law, including, without limitation, an appropriately completed Internal Revenue Service Form W-9, and ACTS will pay the Court-approved amount for attorneys' fees and costs up to two-hundred and fifty thousand dollars and no/100 ($250,000.00) to an account established by Settlement Class Counsel no later than thirty (30) Days after the Effective Date. The attorneys' fees and costs will be paid by ACTS separate and apart from any other sums agreed to under this Settlement Agreement.

8.3     Settlement Class Counsel will file the applications with the Court for the Service Award and attorneys' fees and expenses no later than fourteen (14) Days prior to the deadlines for a Settlement Class Member to opt out of or object to the Settlement, unless otherwise ordered by the Court.

8.4     The Parties agree that ACTS will not in any event or circumstance be required to pay any amounts to Plaintiffs or Settlement Class Counsel for a Service Award or attorneys' fees and costs in excess of the amounts identified above in Paragraphs 8.1 and 8.2.

8.5     The Parties agree that the Court's approval or denial of any request for a Service Award and/or attorneys' fees and costs are not conditions to this Settlement Agreement. The Parties further agree that the amount(s) of a Service Award, and of any award of attorneys' fees or costs, are intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court, or modification, reversal, or appeal of any order of the Court, concerning the amount of a Service Award or any attorneys' fees or costs, ordered by the Court to be paid to Settlement Class Counsel, or Plaintiffs, shall affect whether the Final Order and Judgment is Final, cancel, or terminate this Settlement Agreement, or constitute grounds for cancellation or termination of this Settlement Agreement.

**9.     NOTICES.**

9.1     All notices (other than the Notice) required by the Settlement Agreement shall be made in writing and communicated by mail or hand delivery to the following addresses:

All Notices to Settlement Class Counsel or Plaintiffs shall be sent to:

> Raina C. Borrelli
> raina@turkestrauss.com
> TURKE & STRAUSS LLP
> 613 Williamson St., Suite 201
> Madison, WI 53703

All Notices to ACTS' Counsel or ACTS shall be sent to:

> Claudia D. McCarron
> Paulyne A. Gardner
> MULLEN COUGHLIN LLC
> 426 W. Lancaster Ave., Suite 200
> Devon, PA 19333

9.2     Upon the request of any of the Parties, the Parties agree to promptly provide each other with copies of comments, Objections, requests for exclusion, or other documents, communications, or filings received as a result of the Notice.

**10.     SETTLEMENT APPROVAL PROCESS.**

10.1     As soon as practicable after execution of this Settlement Agreement, the Parties shall jointly submit this Settlement Agreement to the Court and file a motion for preliminary approval of the settlement, requesting entry of a Preliminary Approval Order in the form attached hereto as **Exhibit D**, or an order substantially similar to such form in both terms and cost, which:

(a)     Preliminarily approves this Settlement Agreement;

(b)     Certifies the Settlement Class for settlement purposes only pursuant to Section 2;

(c)     Finds that the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant providing notice to Settlement Class Members;

(d)     Appoints the Claims Administrator in accordance with the provisions *supra*;

(e)     Approves the Notice Program and directs the Claims Administrator and ACTS to provide Notice to Settlement Class Members in accordance with the Notice Program provided for in this Settlement Agreement;

(f)     Approves a customary form of short notice to be mailed to Settlement Class Members (the "Short Form Notice") in a form substantially similar to the one attached hereto as **Exhibit A** and a customary long form of notice ("Long Form Notice") in a form substantially similar to the one attached hereto as **Exhibit B**, which together shall include a fair summary of the Parties' respective litigation positions, the general terms of the Settlement set forth in this Settlement Agreement, instructions for how to opt out of or

object to the settlement, the process and instructions for making claims to the extent contemplated herein, and the date, time, and place of the Final Approval Hearing;

(g)     Approves a Claim Form substantially similar to that attached hereto as **Exhibit C**, and directs the Claims Administrator to conduct Claims Administration in accordance with the provisions of this Settlement Agreement;

(h)     Approves the Opt-Out and Objection procedures as outlined in this Settlement Agreement;

(i)     Schedules a Final Approval Hearing to consider the fairness, reasonableness, and adequacy of the proposed Settlement and whether it should be finally approved by the Court;

(j)     Appoints Settlement Class Counsel;

(k)     Appoints Plaintiffs as the Settlement Class Representatives; and

(l)     Contains any additional provisions agreeable to the Parties that might be necessary or advisable to implement the terms of this Settlement Agreement.

10.2     Within 14 Days of the filing of the Motion for Preliminary Approval, ACTS will also cause the Claims Administrator to provide (at ACTS' expense) notice to the relevant state and federal governmental officials as required by the Class Action Fairness Act.

## 11.     FINAL APPROVAL HEARING.

11.1     Settlement Class Counsel and ACTS' Counsel shall request that after Notice is completed, the Court hold a Final Approval Hearing and grant final approval of the Settlement set forth herein. The Parties will recommend that the Final Approval Hearing be scheduled no earlier than one-hundred and sixty (60) Days after the entry of the Preliminary Approval Order.

11.2    Plaintiffs will file with the Court their brief in support of final approval, attorneys' fees and costs and Service Award no later than fourteen (14) Days before the Final Approval Hearing, or as directed by the Court.

11.3    Plaintiffs will file with the Court their brief in support of attorneys' fees and costs and Service Award no later than fourteen (14) Days prior to the deadline for Settlement Class Members to object or exclude themselves from the Settlement Agreement, or as directed by the Court.

11.4    The Parties shall ask the Court to enter a Final Order and Judgment in substantially the same form as **Exhibit E** attached hereto.

11.5    If and when the Final Order and Judgment becomes Final, the Lawsuit shall be dismissed with prejudice, with the Parties to bear their own attorneys' fees, costs, and expenses not otherwise provided in accordance with this Settlement Agreement.

## 12.    TERMINATION OF THIS SETTLEMENT AGREEMENT.

12.1    Each Party shall have the right to terminate this Settlement Agreement if:

(a)    The Court denies preliminary approval of this Settlement Agreement (or grants preliminary approval through an order that is not substantially similar in form and substance to **Exhibit D** attached hereto);

(b)    The Court denies final approval of this Settlement Agreement (or grants final approval through an order that materially differs in substance from **Exhibit E** attached hereto); or

(c)    The Final Order and Judgment does not become Final because a higher court reverses final approval by the Court.

12.2    If a Party elects to terminate this Settlement Agreement under this Section 12, that Party must provide written notice to the other Party's counsel, by hand delivery, mail, or email within ten (10) Days of the occurrence of the condition permitting termination.

12.3    Nothing shall prevent Plaintiffs or ACTS from appealing or seeking other appropriate relief from an appellate court with respect to any denial by the Court of final approval of the Settlement. In the event such appellate proceedings result, by order of the appellate court or by an order after remand or a combination thereof, in the entry of an order(s) whereby the Settlement is approved in a manner substantially consistent with the substantive terms and intent of this Settlement Agreement, and dismissing all claims in the Lawsuit with prejudice, and otherwise meeting the substantive criteria of this Settlement Agreement for approval of the Settlement, such order shall be treated as a Final Order and Judgment.

12.4    If this Settlement Agreement is terminated or disapproved, or if the Effective Date should not occur for any reason, then: (i) this Settlement Agreement and all orders entered in connection therewith shall be rendered null and void; (ii) the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the Lawsuit or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc*; (iii) ACTS shall be responsible for all Notice and Claims Administration Costs incurred prior to the termination or disapproval; (iv) all Parties shall be deemed to have reverted to their respective positions and status in the Lawsuit as of the date this Settlement Agreement was executed and shall jointly request that a new case schedule be entered by the Court; and (v) ACTS shall have no payment, reimbursement, or other financial obligation of any kind as a result of this Settlement Agreement, other than as stated in Sub-Part (iii) above.

**13.    RELEASE.**

13.1    On the Effective Date, the Parties and each and every Settlement Class Member shall be bound by this Settlement Agreement and shall have recourse only to the benefits, rights,

and remedies provided hereunder. No other action, demand, suit, arbitration, or other claim may be pursued against ACTS or any Released Persons with respect to the Released Claims.

13.2    Upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, pursuing, or participating in any recovery in any action in this or any other forum (other than participation in the Settlement as provided herein) in which any of the Released Claims is asserted.

13.3    On the Effective Date and in consideration of the promises and covenants set forth in this Settlement Agreement, (i) Plaintiffs and each Settlement Class Member, and each of their respective spouses and children with claims on behalf of the Settlement Class Member, executors, representatives, guardians, wards, heirs, estates, successors, predecessors, next friends, co-borrowers, co-obligors, co-debtors, legal representatives, attorneys, agents, and assigns, and all those who claim through them or who assert claims (or could assert claims) on their behalf (including the government in the capacity as *parens patriae* or on behalf of creditors or estates of the releasors), and each of them (collectively and individually, the "Releasing Persons"), and (ii) Settlement Class Counsel and each of their past and present law firms, partners, or other employers, employees, agents, representatives, successors, or assigns will be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, completely, and forever released and discharged the Released Persons from the Released Claims. The release set forth in the preceding sentence (the "Release") shall be included as part of any judgment, so that all Released Claims shall be barred by principles of res judicata, collateral estoppel, and claim and issue preclusion.

13.4    Without in any way limiting the scope of the Release, the Release covers, without limitation, any and all claims for attorneys' fees, costs, and expenses incurred by Settlement Class Counsel or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, in connection with or related in any manner to the Lawsuit, the Settlement, the administration of such Settlement and/or the Released Claims, as well as any and all claims for the Service Award to Plaintiffs.

13.5    Subject to Court approval, as of the Effective Date, all Settlement Class Members shall be bound by this Settlement Agreement and the Release and all of their claims shall be dismissed with prejudice and released, irrespective of whether they received actual notice of the Lawsuit or this Settlement.

13.6    As of the Effective Date, the Released Persons are deemed, by operation of the entry of the Final Order and Judgment, to have fully released and forever discharged Plaintiffs, the Settlement Class Members, Settlement Class Counsel, or any other counsel representing Plaintiffs or Settlement Class Members, or any of them, of and from any claims arising out of the Lawsuit or the Settlement. Any other claims or defenses ACTS or other Released Persons may have against Plaintiffs, the Settlement Class Members, Settlement Class Counsel, or any other counsel representing Plaintiffs or Settlement Class Members, including, without limitation, any claims based upon or arising out of any employment, debtor-creditor, contractual, or other business relationship that are not based upon or do not arise out of the institution, prosecution, assertion, settlement, or resolution of the Lawsuit or the Released Claims are not released, are specifically preserved and shall not be affected by the preceding sentence.

13.7    As of the Effective Date, the Released Persons are deemed, by operation of entry of the Final Order and Judgment, to have fully released and forever discharged each other of and

from any claims they may have against each other arising from the claims asserted in the Lawsuit, including any claims arising out of the investigation, defense, or Settlement of the Lawsuit.

13.8    Nothing in the Release shall preclude any action to enforce the terms of this Settlement Agreement, including participation in any of the processes detailed herein.

**14.    EFFECTIVE DATE.**

14.1    The "Effective Date" of this Settlement Agreement shall be ten (10) Days after the date when each and all of the following conditions have occurred:

(a)    This Settlement Agreement has been fully executed by all Parties and their counsel;

(b)    Orders have been entered by the Court certifying the Settlement Class, granting preliminary approval of this Settlement Agreement, and approving the Notice Program and Claim Form, all as provided above;

(c)    The Court-approved Notice has been sent and the Settlement Website has been duly created and maintained as ordered by the Court;

(d)    The Court has entered a Final Order and Judgment finally approving this Settlement Agreement, as provided above;

(e)    The Final Order and Judgment has become Final; and

(f)    The time for any appeal of the Final Order and Judgment has expired.

**15.    MISCELLANEOUS PROVISIONS.**

15.1    The recitals and exhibits to this Settlement Agreement are an integral part of the Settlement and are expressly incorporated and made a part of this Settlement Agreement.

15.2    The Parties (i) acknowledge that it is their intent to consummate this agreement; and (ii) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms

and conditions of this Settlement Agreement, and to exercise their best efforts to accomplish the terms and conditions of this Settlement Agreement.

15.3    This Settlement Agreement is for settlement purposes only. No provision contained in this Settlement Agreement or any action taken hereunder shall constitute or be construed as an admission of the merit or validity of any claim or any fact alleged in the Lawsuit or of any wrongdoing, fault, violation of law, or liability of any kind on the part of ACTS or the Released Persons or any admission by ACTS or the Released Persons with respect to any claim or allegation made in any action or proceeding or any concession as to the merit of any of the claims asserted by Plaintiffs in the Lawsuit. This Settlement Agreement shall not be offered or be admissible in evidence against either Party or the Released Persons or cited or referred to in any action or proceeding, except in an action or proceeding brought to enforce its terms. Nothing contained herein is or shall be construed or admissible as an admission by ACTS or the Released Persons that Plaintiffs' claims or any similar claims are suitable for class treatment outside of this Settlement.

15.4    In the event that there are any developments in the effectuation and administration of this Settlement Agreement that are not dealt with by the terms of this Settlement Agreement, then such matters shall be dealt with as agreed upon by the Parties, and failing such agreement, as shall be ordered by the Court. The Parties shall execute all documents and use their best efforts to perform all acts necessary and proper to promptly effectuate the terms of this Settlement Agreement and to take all necessary or appropriate actions to obtain judicial approval of this Settlement Agreement in order to give this Settlement Agreement full force and effect.

15.5    No Person shall have any claim against Plaintiffs, Settlement Class Counsel, ACTS, ACTS' Counsel, the Claims Administrator, the Released Persons, or their agents based on

administration of the Settlement substantially in accordance with the terms of the Settlement Agreement or any court order.

15.6    This Settlement Agreement constitutes the entire agreement between the Parties with respect to the settlement of the Lawsuit. This Settlement Agreement supersedes all prior negotiations and agreements with respect to the settlement of the Lawsuit and may not be modified or amended, except by a writing signed by or on behalf of the Parties or their respective successors-in-interest. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part of the subject matter of this Settlement Agreement has been made or relied on, except as expressly set forth in this Settlement Agreement.

15.7    There shall be no waiver of any term or condition absent an express writing to that effect by the waiving Party. No waiver of any term or condition in this Settlement Agreement shall be construed as a waiver of a subsequent breach or failure of the same term or condition, or waiver of any other term or condition of this Settlement Agreement.

15.8    In the event a third party, such as a bankruptcy trustee, former spouse, or other third party, has or claims to have a claim against any payment made or to be made to a Settlement Class Member, it is the sole responsibility of the Settlement Class Member to transmit the funds to such third party in satisfaction of such claims.

15.9    The Parties intend this Settlement to be a final and complete resolution of all disputes between them with respect to the Lawsuit. The Settlement compromises and releases claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim or defense. The Parties each agree that the Settlement was negotiated in good faith by the Parties and was reached voluntarily after consultation with competent legal counsel. The

Parties reserve their right to rebut, in a manner that such Party determines to be appropriate, any contention made in any public forum that the Lawsuit was brought or defended in bad faith or without a reasonable basis. It is agreed that neither Party shall have any liability to one another as it relates to the Lawsuit, except as set forth herein.

15.10   This Settlement Agreement shall not be construed more strictly against one Party than another merely because of the fact that it may have been prepared by counsel for one of the Parties, it being recognized that because of the arm's-length negotiations resulting in the Settlement Agreement, all Parties hereto have contributed substantially and materially to the preparation of the Settlement Agreement. All terms, conditions, and exhibits are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

15.11   The Court shall retain jurisdiction, after entry of the Final Order and Judgment, with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the Court for purposes of the implementation and enforcement of the Settlement embodied in this Settlement Agreement and any dispute with respect thereto.

15.12   This Settlement Agreement shall be construed under and governed by the laws of Pennsylvania without regard to its choice of law provisions.

15.13   In the event that any one or more of the provisions contained in this Settlement Agreement shall for any reason be held to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect the other provisions, which shall remain in full force and effect as though the invalid, illegal, or unenforceable provision had never been a

part of this Settlement Agreement, as long as the benefits to ACTS or the Settlement Class Members are not materially altered as the result of the invalid, illegal, or unenforceable provision.

15.14   This Settlement Agreement shall be binding upon and inure to the benefit of the successors and assigns of the Parties.

15.15   The headings used in this Settlement Agreement are for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement. In construing this Settlement Agreement, the use of the singular includes the plural (and vice-versa), and the use of the masculine includes the feminine (and vice-versa).

15.16   All dollar amounts are in United States dollars (USD).

15.17   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

15.18   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

15.17   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

15.18   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,

/s/ *Cara-Aimee Long Corra*
_____

Plaintiff Cara-Aimee Long Corra


/s/ _____

Plaintiff Valarie Hanna


/s// _____

ACTS Retirement Services, Inc.

15.17   This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it and all of which shall be deemed a single Settlement Agreement.

15.18   Each Party to this Settlement Agreement and the signatories thereto warrant that he, she, or it is acting upon his, her, or its independent judgment and the advice of his, her, or its counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other Party, other than the warranties and representations expressly made in this Settlement Agreement.

15.19   Each signatory below warrants that he or she has authority to execute this Settlement Agreement and bind the Party on whose behalf he or she is executing the Settlement Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused the Settlement Agreement to be executed,


/s/ _____

Plaintiff Cara-Aimee Long Corra


/s/ _____

Plaintiff Valarie Hanna


/s// _____

ACTS Retirement Services, Inc.

/s/ _____

Plaintiff Cara-Aimee Long Corra


/s/ _____

Plaintiff Valarie Hanna


ACTS Retirement Services, Inc.

/s/ By _____
       Glenn D. Fox
       Secretary


This agreement is approved as to form and content by the Parties' respective counsel and Settlement Class Counsel agrees to be bound by its terms.

Dated: October 10, 2023                          Dated: October 10, 2023


/s/ _____                     /s/ _____

Claudia D. McCarron                              Raina C. Borrelli
Paulyne A. Gardner                               **TURKE & STRAUSS, LLP**
Richard M. Haggerty                              613 Williamson St., Suite 201
**MULLEN COUGHLIN LLC**                          Madison, Wisconsin 53703
426 W. Lancaster Ave., Suite 200                 Telephone: (608) 237-1775
Devon, PA 19333                                  Facsimile: (608) 509-4423
Telephone: (267) 930-4770                        raina@turkestrauss.com
Facsimile: (267) 930-4771
cmccarron@mullen.law                             *Counsel for Plaintiffs and Proposed*
pgardner@mullen.law                              *Settlement Class Counsel*
rhaggerty@mullen.law


*Counsel for ACTS Retirement Services, Inc.*

                                                 Dated: October 10, 2023

37

/s/ _____

Plaintiff Cara-Aimee Long Corra


/s/ _____

Plaintiff Valarie Hanna


ACTS Retirement Services, Inc.

/s// _____
            Glenn D. Fox
            Secretary


        This agreement is approved as to form and content by the Parties' respective counsel and

Settlement Class Counsel agrees to be bound by its terms.

Dated: October 11, 2023

/s/ *Claudia D. McCarron*

Claudia D. McCarron
Paulyne A. Gardner
Richard M. Haggerty
**MULLEN COUGHLIN LLC**
426 W. Lancaster Ave., Suite 200
Devon, PA 19333
Telephone: (267) 930-4770
Facsimile: (267) 930-4771
cmccarron@mullen.law
pgardner@mullen.law
rhaggerty@mullen.law


*Counsel for ACTS Retirement Services, Inc.*

Dated: October 11, 2023

/s/ *Raina Borrelli*

Raina C. Borrelli
**TURKE & STRAUSS, LLP**
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423
raina@turkestrauss.com

*Counsel for Plaintiffs and Proposed
Settlement Class Counsel*

Dated: October 11, 2023

/s/

Patrick Howard
**SALTZ MONGELUZZI &**
**BENDESKY, PC**
1650 Market Street, 52nd Floor
One Liberty Place
Philadelphia, PA  19103
Tel: 215-575-3895
Email: phoward@smbb.com

*Counsel for Plaintiffs and Proposed*
*Settlement Class Counsel*