**UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARA-AIMEE LONG CORRA and VALARIE HANNA, individually and on behalf of all others similarly situated, | |
| Plaintiffs, | Case No. 2:22-cv-02917-JDW |
| v. | |
| ACTS RETIREMENT SERVICES, INC. | |
| Defendant. | |

**PLAINTIFFS' MOTION AND INCOPORATED MEMORANDUM OF LAW IN
SUPPORT OF THEIR REQUEST FOR FINAL APPROVAL OF
<u>A CLASS ACTION SETTLEMENT</u>**

## Table of Contents

I.    INTRODUCTION ...................................................................................................... 1

II.   BACKGROUND ...................................................................................................... 3

    A.    The Parties ................................................................................................... 3

    B.    The Data Security Incident ........................................................................... 3

    C.    The Litigation History ................................................................................... 4

    D.    The Settlement Negotiations ......................................................................... 5

    E.    The Settlement Benefits ................................................................................ 6

    F.    Preliminary Approval and Post-Hearing Submissions .................................. 7

    G.    Notice Program and Settlement Administration ............................................ 8

        1.    The Notice Mailing ........................................................................... 8

        2.    The Website and Toll-Free Number ................................................... 9

        3.    Claims, Opt-outs and Objections .................................................... 10

    H.    Attorneys' Fees and Expenses, Class Representative Service Awards, and
           Settlement Administration. ......................................................................... 10

III.  LEGAL STANDARD .............................................................................................. 11

IV.   ARGUMENT .......................................................................................................... 13

    A.    Settlement Class Certification Should Not Be Disturbed ............................ 13

    B.    The Rule 23(e) Factors Support Final Approval of the Settlement ............... 13

        1.    Adequacy of Representation and Arms' Length Negotiations ............ 13

        2.    Adequacy of Relief ........................................................................ 14

        3.    The Settlement Treats Class Members Equitably Relative to Each
             Other ............................................................................................. 16

    C.    The *Girsh* Factors Support Final Approval of the Settlement. ..................... 17

        1.    Complexity, Expense, and Likely Duration of the Litigation.............. 17

        2.    Reaction of the Class to the Settlement ........................................... 17

        3.    Stage of the Proceedings and Amount of Discovery Completed.............. 18

        4.    Risks of Establishing Liability and Damages ................................... 18

        5.    Risk of Maintaining the Class Action Through Trial ........................ 18

        6.    Ability of Defendants to Withstand a Greater Judgment................... 19

        7.    Range of Reasonableness of the Settlement in Light of the Best Possible
             Recovery and Range of Reasonableness of the Settlement to Possible
             Recovery in Light of all the Attendant Risks of Litigation ................... 19

V.    CONCLUSION........................................................................................................ 20

## Table of Authorities

**Page(s)**

**Cases**

*Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*,
   2016 WL 4766079 (E.D. Pa. Sept. 3, 2016) ........................................................... 15

*Corra v. ACTS Retirement Services, Inc.*,
   2024 WL 22075 (E.D. Pa. January 2, 2024) ........................................................... 16

*Fulton-Green v. Accolade, Inc.*,
   2019 WL 4677954 (E.D. Pa., 2019) ......................................................................... 5

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)...................................................................................... 13

*In re Baby Prods. Antitrust Litig.*,
   708 F.3d 163 (3d Cir. 2013)...................................................................................... 12

*In re Capital One Consumer Data Security Breach Litig.*,
   2022 WL 18107626 (E.D. Va., Sept. 13, 2022)....................................................... 17

*In re Cendant*,
   264 F.3d 201 (3d Cir. 2001).............................................................................. 11, 18

*In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*,
   333 F.R.D. 364 (E.D. Pa. 2019)............................................................................... 12

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................ 11, 18

*In re Linerboard Antitrust Litig.*,
   296 F. Supp. 2d 568 (E.D. Pa. 2003) ...................................................................... 18

*In re N.J. Tax Sales Certificate Antitrust Litig.*,
   750 F. App'x 73 (3d Cir. 2018)........................................................................ 13, 20

*In re Nat'l Football League Players Concussion Injury Litig.*,
   821 F.3d 410 (3d Cir. 2016).............................................................................. passim

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998)...................................................................... 12, 19, 20

*In re Shop-Vac Marketing and Sales Practices Litig.*,
   Civil No. 12-md-2380, 2016 WL 7178421 (M.D. Pa. Dec. 9, 2016) ........................ 9

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) .......................................................................... passim

*In re Wawa, Inc. Data Security Litigation*,
    No. 19-6019, 2022 WL 1173179 (E.D. Pa.  2022) ............................................. 7, 15

*In re Zappos Sec. Breach Litig.*,
    No. 12-cv-325, 2019 WL 12026706 ....................................................................... 7

*Linnins v. Haeco Ams., Inc.*,
    No. 16-cv-486, 2018 WL 5312193 (M.D.N.C. Oct. 26, 2018) .................................. 7

*Rose v. Travelers Home and Marine Ins.* Co.,
    2020 WL 4059613 (E.D. Pa. July 20, 2020) ........................................................ 14

*Sullivan v. DB Investments, Inc.*,
    667 F.3d 273 (3d Cir. 2011) ............................................................................ 5, 19

*Taha v. Bucks Cty. Pennsylvania*,
    No. CV 12-6867-WB, 2020 WL 7024238 (E.D. Pa. Nov. 30, 2020) ...................... 12

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ...................................................... 20

**Statutes**

28 U.S.C. § 1715(b) .................................................................................................. 9

**Rules**

Fed. R. Civ. P. 23 ...................................................................................... 5, 11, 12, 19
Fed. R. Civ. P. 23(a)(4) ............................................................................................ 14
Fed. R. Civ. P. 23(e) ........................................................................... 11, 13, 14, 17
Fed. R. Civ. P. 23(e)(2) ....................................................................................... passim
Fed. R. Civ. P. 23(e)(2)(A) ...................................................................................... 14
Fed. R. Civ. P. 23(e)(2)(D) ...................................................................................... 17
Fed. R. Civ. P. 23(e)(3) ........................................................................................... 12

## **Table of Attached Exhibits**

**Exhibit 1** – October 11, 2023, Amended Class Action Settlement Agreement

**Exhibit 2** – Declaration of Angeion Group, LLC Associate Project Manager, Tim Perng

## I.  INTRODUCTION

Plaintiffs, Cara-Aimee Long Corra and Valarie Hanna ("Plaintiffs") and Defendant, ACTS Retirement Services, Inc. ("Defendant" or "ACTS"), seek an order from this Court granting final approval of their proposed class action settlement stemming from an April 2022 Data Security Incident,[1] where personal identifying information and personal health information of 18,276 of Defendant's former employees and 2,462 of its current or former residents was potentially compromised. The parties submit that, as discussed in detail below, the Settlement meets Fed. R. Civ. P. 23(e)(2)'s "fair, reasonable, and adequate" standard and should be finally approved.

The Settlement provides the 20,754 Settlement Class members several layers of relief for potential harms associated with the Data Security Incident. First, Class Members can seek compensation for both ordinary and extraordinary losses. Ordinary losses are any out-of-pocket expenses, up to a maximum of $350, caused by the Data Breach. That includes such things as bank fees, phone charges, data charges, postage and/or gasoline for travel to banks and/or other financial institutions, as well as payments for credit reports, credit monitoring or identity theft insurance. Class Members can also get up to $75 (3 hours at $25) for time lost dealing with the fallout from the Data Breach, including, but not limited to, time spent on the telephone dealing with financial institutions or credit card companies. For extraordinary losses, Class Members can get up to $3,500 for documented identity theft that was more likely than not the result of the Data Breach. Class Members are further entitled to two (2) years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product, which includes dark web monitoring and can cost anywhere from $7-20 per person, per month.[2] There is $350,000 in

---

[1] The Amended Settlement Agreement is attached as Exhibit 1 to the Motion.  Unless otherwise indicated, the capitalized terms have the same definition as set forth in the Settlement Agreement.

[2] Details about Pango's service are available at: https://identitydefense.com/

cash available to cover these payments. Finally, the Settlement includes an injunctive component, requiring that Defendant enhance its cybersecurity protocols and make significant improvements to its data storage practices, resulting in an increase in the total annual amount it spends on data security by approximately $428,000. The Settlement compares favorably with settlements in similar data breach litigation and was reached only after intensive arm's length negotiations before a skilled mediator.

The parties submitted their Motion for Preliminary Settlement Approval on July 17, 2023. Dkt. 37. The Court held an extensive hearing on that motion on September 21, 2023, and requested the parties prepare supplemental briefing on certain issues. Dkt. 41. The parties submitted that supplement on October 11, 2023, including an Amended Settlement Agreement. Dkt. 42 & 42 at Exhibit B. On January 2, 2024, the Court issued a thorough opinion and order granting preliminary approval, certified the proposed Settlement Class, appointed the Claims Administrator, Angeion Group, ordered dissemination of the Court-approved Notice, and set the Final Approval Hearing for July 2, 2024. Dkt. 43 & 44.[3]

The parties complied with the Court's directives. The Short Form Notice was sent to 20,687 Settlement Class members on February 1, 2024. The Notice successfully reached 94% of the identified Settlement Class Members. In response to the Notice, only one (1) Settlement Class Member requested exclusion by the April 16, 2024, deadline, and no one filed an objection to the

---

[3] The late Hon. Gene E.K. Pratter was originally assigned to this matter, heard oral argument on Defendant's Rule 12 motion, and later preliminarily approved the settlement. The matter was reassigned to the docket of this Court on May 3, 2024. Dkt. 47. The parties were saddened to learn of the passing of Judge Pratter on May 17, 2024. She was vigorously engaged and thoroughly examined every aspect of this case, which is evident from the 31-page opinion she issued granting preliminary approval. Her inquisitive nature and intellectual curiosity will be missed by the legal community she so well served both privately and publicly for nearly 50 years.

Settlement's terms or the requested attorneys' fees, reimbursement of litigation expenses, or the Service Award payment of $2,500 to the named Plaintiffs.

With only one exclusion and no objections, Plaintiffs respectfully request that the Court finally approve the settlement.

## II. BACKGROUND

### A. The Parties

Plaintiffs Cara-Aimee Long Corra and Valarie Hanna both worked for ACTS over 20 years ago. ACTS is a not-for-profit parent company to many affiliate companies that provide residential, assisted living, and skilled care services to senior citizens. As an employer and housing/medical services provider, ACTS collects and maintains personal identifying information ("PII") and personal health information ("PHI") for its current and former employees and its current and former residents. The PII and PHI ACTS collects and maintains—and the information potentially exposed in the Data Breach Incident—includes name, address, Social Security number, date of birth, financial account number and routing number, and medical treatment or diagnosis information.

### B. The Data Security Incident

There are conflicting accounts as to how the Data Breach was uncovered. According to the notice letter (dated June 27, 2022) ACTS sent to the 20,754 impacted people, ACTS determined on May 2, 2022, that data was being accessed and acquired without authorization since April 29, 2022. According to ACTS' interrogatory responses, beginning on or around April 7, 2022, ACTS detected suspicious activity on its network and hired cyber investigators, but it took the investigators almost six weeks to determine what information was accessed and acquired.

ACTS first began notifying impacted current and former residents and employees in or around June and July 2022. Both Plaintiffs received their notice letters in early July 2022. By mid-

July, Plaintiff Corra experienced fraud on her checking account when someone tried to transfer $2,500 via Zelle. The bank intervened in time to stop the fraudulent transaction from processing, but Plaintiff spent several hours on the phone and online dealing with this fraud and then freezing her credit and enrolling in credit monitoring and protection. Plaintiff Corra also has experienced an increase in spam phone calls and text messages. Plaintiff Hanna has similarly devoted dozens of hours to reviewing her financial statements and credit reports to guard against any fraud or identity theft. Additionally, the Plaintiffs remain at present and continuing risk of identity theft and fraud far into the future.

### C. The Litigation History

Plaintiff Corra filed the first complaint on July 26, 2022 (Dkt. 1), and Plaintiff Hanna was added on October 12, 2022, via an amended complaint (Dkt. 15). Defendant moved to dismiss on October 26, 2022. Dkt. 17. That motion was fully briefed as of November 15, 2022, and the Court heard oral argument on December 22, 2022 (Dkt. 22), and supplemental briefing was ordered and submitted (Dkt. 24, 26). On December 22, the Court also held a case management conference and set a schedule for the disclosure of experts and class certification briefing. Dkt. 23. Thereafter, the parties agreed on and submitted to the Court a proposed protective order and ESI protocol, both which we approved. Dkt. 28, 30. Written discovery was served by both parties; responses were provided, and documents produced.

With Plaintiffs' expert disclosures initially due on May 5, 2023 (Dkt. 23), the parties agreed to attend private mediation in March 2023. The Court denied the parties' request to stay the case pending mediation (Dkt. 32), and instead granted a brief extension of the deadlines (Dkt. 34). If the May 31, 2023, mediation proved unsuccessful, Plaintiffs were due to disclose their experts on June 20, 2023. Dkt. 34.

### D. The Settlement Negotiations

As part of the settlement negotiations, Plaintiffs made an initial "all-in" modest 7-figure demand from which they intended to include the same, standard elements of data breach settlements, including a framework that accounted for reimbursement for out-of-pocket losses, lost time, and financial / credit monitoring, as well as the cost of notice and administration, attorneys' fees and costs, and service awards for the class representatives. For ACTS's part, it refused any sort of "all in" resolution, and instead proposed an initial 5-figure aggregate cap with the same relief points (time lost, out-of-pockets, credit monitoring, etc.).

Over the course of a full 9-hour mediation session with the Hon. Wayne Andersen (Ret.) of JAMS's Chicago office, the parties discussed the various strengths and weaknesses of the claims, with much of the discussion focused on the aggregate cap. On one hand was ACTS's potential exposure and the questions surrounding why the company had maintained this sensitive data for, in some instances, over 20 years. Additionally, the parties discussed the quickly escalating costs associated with protracted litigation; expert discovery was less than 30 days away, which would result in both parties incurring significant time and expense. *See* Dkt. 23 (Scheduling Order).

On the other hand, Plaintiffs were presented with the propriety of class certification and proving class wide damage considering ACTS's contention that only 187 of the 18,276 former employees "had financial information potentially impacted" as well as potential pitfalls in addressing the choice of law analysis as ACTS claimed its former employees reside in all 50 states, as well as the District of Columbia and Puerto Rico. *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 309 (3d Cir. 2011) ("the legal uncertainty resulting from the complicated choice-of-law issues would unduly complicate the process for establishing predominance under Rule 23.") (internal quotations and citations omitted); *Fulton-Green v. Accolade, Inc.*, 2019 WL 4677954, at *8 (E.D.

Pa., 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.") (citation omitted).

Ultimately, with the assistance and recommendations of Judge Andersen, the parties reached agreement on the terms of the Settlement.

### E. The Settlement Benefits

The Settlement provides for three-tiers of monetary relief to Class Members. Class Members can seek compensation for both ordinary and extraordinary losses. Ordinary losses are any out-of-pocket expenses, up to a maximum of $350, caused by the Data Breach. Exhibit 1 at ¶3.1(a). That includes such things as bank fees, phone charges, data charges, postage and/or gasoline for travel to banks or other financial institutions, as well as payments for credit reports, credit monitoring or identity theft insurance. *Id*. Class Members can also get up to $75 (3 hours at $25) for time lost dealing with the fallout from the Data Breach, including, but not limited to, time spent on the telephone dealing with financial institutions or credit card companies. *Id*. at ¶3.1(a)(iii). For extraordinary losses, Class Members can get up to $3,500 for documented identity theft that was more likely than not the result of the Data Breach. *Id*. at ¶3.1(b). Class Members are also entitled to two (2) additional years of credit monitoring and identity theft protection with $1 million in insurance through Pango Group's Identity Defense product, which includes Dark Web Monitoring and can cost anywhere from $7-20 per person, per month. *Id*. at ¶3.3. While the cash components are capped at $350,000; credit monitoring, theft insurance, and Dark Web Monitoring are not capped in any fashion. *Id*. at ¶3.2. Finally, the Settlement includes an injunctive component, requiring that Defendant enhance its cybersecurity protocols and make significant improvements to its data storage practices. *Id*. at ¶3.4. The Defendant estimates that these data security improvements will increase its annual cybersecurity budget by $428,000.

In exchange for the consideration set forth in the Settlement Agreement, all Class Members who did not exclude themselves from Settlement release their claims against ACTS arising from the Data Breach Incident. The terms of this "[s]ettlement…compare[] favorably with other data breach settlements, many of which are quite modest. Being modest does not make a settlement insufficient or unsupportable." *In re Wawa, Inc. Data Security Litigation*, No. 19-6019, 2022 WL 1173179, at *7 (E.D. Pa.  2022) (collecting cases: *Linnins v. Haeco Ams., Inc.*, No. 16-cv-486, 2018 WL 5312193, at *1 (M.D.N.C. Oct. 26, 2018) (settlement included $312,500 claim fund for reimbursement of specified expenses to employees whose personally identifiable information was accessed in data breach); *Brady v. Due N. Holdings, LLC*, No. 17-cv-1313, Doc. No. 59, at 4 & Doc. No. 65, at 2 (S.D. Ind. Oct. 16, 2018) (settlement provided extension of identity theft protection services and reimbursement of out-of-pocket expenses of up to $150, $250, $350, or $500 depending on settlement tier); *In re Zappos Sec. Breach Litig.*, No. 12-cv-325, 2019 WL 12026706, ¶2(D) (D. Nev. Dec. 23, 2019) (data breach settlement provided "10% coupon" for Zappos goods); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, No. 11-md-2258, Doc. No. 240-1, at 6–7 & Doc. No. 211 (S.D. Cal. May 4, 2015) (providing data breach reimbursement of actual identity theft losses with $1 million aggregate cap and choice of items from mix of Sony games, online display themes, or 3-month subscription to Sony PlayStation service)).

### F.  Preliminary Approval and Post-Hearing Submissions

The parties submitted their Motion for Preliminary Settlement Approval on July 17, 2023. Dkt. 37. The Court held an extensive hearing on that motion on September 21, 2023, and requested the parties prepare supplemental briefing on certain issues. Dkt. 41. The parties submitted that supplement on October 11, 2023, including an Amended Settlement Agreement. Exhibit 1.

On January 2, 2024, the Court issued a thorough opinion and order granting preliminary approval, certified the proposed Settlement Class, appointed the Claims Administrator- Angeion Group, ordered dissemination of the Court-approved Notice, and set the Final Approval Hearing for July 2, 2024. Dkt. 43 & 44.

The certified Settlement Class is defined as follows:

> All persons whose personal identifying information and/or protected health information was potentially compromised    in the    Data Security Incident that occurred in April 2022, and who received notice from ACTS of that Data Security Incident.  Excluded from the Settlement Class are (i) ACTS; (ii) the Related Entities; (iii) all Settlement Class Members who timely and validly request exclusion from the Settlement Class; (iv) any judges assigned to this case and their staff and family; and (v) any other Person found by a court of competent jurisdiction to be guilty under criminally law of initiating, causing, aiding, or abetting the criminal activity occurrence of the Data Security Incident or who pleads *nolo contendere* to any such charge.

Dkt. 44 at § D, ¶1.

### G. Notice Program and Settlement Administration

ACTS agreed to separately pay the costs associated with Settlement Administration, including the dissemination of Notice and claims processing. Exhibit 1 at ¶¶3.8, 4.1. After the order granting preliminary approval, Defendant supplied Angeion with the electronic files containing the records of Settlement Class members' names and mailing addresses. *See* Declaration of Angeion Group Associate Project Manager Tim Perng at ¶5 (attached as Exhibit 2). After analyzing the data and removing duplicative records, Angeion identified 20,772 unique class members. *Id*. at ¶6.

### 1. The Notice Mailing

On February 1, 2024, Angeion caused the Short Form Notice to be mailed to the 20,687 Class Member records that it had a sufficient mailing address (85 did not have verifiable addresses). *Id*. at ¶7. After this mailing, 3,158 Notices were returned to Angeion as undeliverable.

*Id.* at ¶9. Angeion conducted address verification searches (commonly referred to as "skip traces") to locate updated address information for the undeliverable Notices. *Id.* Angeion was able update the addresses for 1,997 Class Members and remail Notices on March 12, 2024, with just two being returned as undeliverable. *Id.* Out of the 20,772 identified Settlement Class members,19,528 were able to be positively identified and mailed a Short Form Notice, a 94% deliverable rate. *In re Shop-Vac Marketing and Sales Practices Litig.*, Civil No. 12-md-2380, 2016 WL 7178421, at *7 (M.D. Pa. Dec. 9, 2016) (granting final approval with a 93% deliverable rate).

Pursuant to 28 U.S.C. § 1715(b), Angeion also caused CAFA notice to be sent to the Attorneys General for all states and territories and the Attorney General of the United States on July 27, 2023. Exhibit 2 at ¶4.

### 2. The Website and Toll-Free Number

On January 31, 2024, Angeion established the following Settlement website: www.ACTSRetirementDataSettlement.com ("Settlement Website"). Exhibit 2 at ¶11. The Settlement Website contains general information about the Settlement, including answers to frequently asked questions, important dates, and deadlines pertinent to this matter, and copies of important documents. *Id.* Visitors to the Settlement Website could download: (1) the Claim Form, (2) the Long Form Notice, (3) the Short Form Notice, (4) the Settlement Agreement (5) the Preliminary Approval Order (6) the Class Action Complaint (7) and the First Amended Class Action Complaint, among other documents. *Id.* As of May 28, 2024, the Settlement Website has had approximately 6,160 page views and approximately 3,337 sessions, which represents the number of individual sessions initiated by all users on the website. *Id.* at ¶12.

On January 31, 2024, Angeion also established the following toll-free line dedicated to this case: 1-866-720-6662. *Id.* at ¶11.  The toll-free line utilized an interactive voice response ("IVR")

system to provide Class Members with responses to frequently asked questions and information about filing a claim and important deadline dates. *Id*. The toll-free line remains accessible 24 hours a day, 7 days a week. *Id.* As of May 28, 2024, the toll-free number has received approximately 340 calls, totaling 1,726 minutes. *Id*. at ¶14.

### 3.   Claims, Opt-outs and Objections

The deadline for members of the Settlement Class to submit a Claim Form was May 1, 2024. *Id*. at ¶15. As of May 23, 2024, Angeion has received approximately 228 Online Claim Form submissions and 89 mailed Claim Form submissions, a total of 317. *Id*. at ¶14.  These Claim Form submissions are still subject to final audits, including a final assessment of each claim's validity and a review for duplicate submissions. *Id*.

The deadline for Settlement Class members to request exclusion from, or object to, the Settlement was April 16, 2024. *Id*. at ¶¶17-18. As of May 28, 2024, Angeion has received 1 timely request for Exclusion from the Settlement and has not received nor is it aware of any Objections to the Settlement. *Id*. at ¶16.

**H. Attorneys' Fees and Expenses, Class Representative Service Awards, and Settlement Administration.**

Plaintiffs filed their Motion for An Award of Attorneys' Fees, Reimbursement of Litigation Costs, and Payment of Service Awards to the Class Representatives on April 1, 2024. Dkt.  46. That motion sets forth that separate and apart from the compensation to Settlement Class members, ACTS has agreed to pay $250,000 to cover payment of attorneys' fees and expenses. Exhibit 1 at ¶3.6. That amount includes $16,669.26 as litigation expenses, leaving $233,300.74 as attorneys' fees to be divided equally between the two law firms appointed as Class Counsel. *See generally* Dkt. 46.  In addition, that Motion also requests that the Court approve a $2,500 payment to each of the Class Representatives. *Id.* at 26. The proposed Service Awards are intended to recognize the

Class Representatives for their time, effort, and commitment on behalf of the Settlement Class, including participating in discovery. *Id.*

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 23 requires that a class action "may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e).  Before granting final approval, a court must determine that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  This requires a court to "independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished." *In re Cendant*, 264 F.3d 201, 231 (3d Cir. 2001) (*quoting In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)).

"[T]here is an overriding public interest in settling class action litigation," *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004), and "[t]he law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation." *Gen. Motors*, 55 F.3d at 784. Accordingly, "when evaluating a settlement, a court should be 'hesitant to undo an agreement that has resolved a hard-fought, multi-year litigation.'" *In re Comcast Corp. Set-Top Cable TV Box Antitrust Litig.*, 333 F.R.D. 364, 378 (E.D. Pa. 2019) (*quoting In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 175 (3d Cir. 2013)). "The decision of whether to approve a proposed settlement of a class action is left to the sound discretion of the district court." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 436 (3d Cir. 2016) (*quoting In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 299 (3d Cir. 1998)).

In determining whether a proposed class action settlement is fair, reasonable, and adequate, the recently amended provisions of Rule 23 require courts to consider whether:

(A)     the class representatives and class counsel have adequately
        represented the class;
(B)     the proposal was negotiated at arm's length;
(C)     the relief provided for the class is adequate, taking into
        account:
        (i)     the costs, risks, and delay of trial and appeal;
        (ii)    the effectiveness of any proposed method of distributing relief to the class,
                including the method of processing class-member claims;
        (iii)   the terms of any proposed award of attorney's fees, including timing of
                payment; and
        (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)     the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

"The factors set forth in Rule 23(e)(2) augment, rather than replace, the traditional factors developed by courts to assess the fairness of a class action settlement." *Taha v. Bucks Cty. Pennsylvania*, No. CV 12-6867-WB, 2020 WL 7024238, at *4 (E.D. Pa. Nov. 30, 2020) (citing Fed. R. Civ. P. 23(e)(2) Advisory Committee Note ("The goal of [the Rule 23(e)(2)] amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.")).

In the Third Circuit, courts analyze the factors propounded in *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975), which are (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risk of maintaining the class through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of the attendant risks of litigation. *Nat'l Football League*, 821 F.3d at 437. "A court may approve a settlement even if it does not find that each of these factors weighs in favor of approval." *In re N.J. Tax Sales Certificate Antitrust Litig.*, 750 F. App'x 73, 77 (3d Cir. 2018). Also, a presumption

of fairness exists where, as here, a settlement was negotiated at arms' length, discovery was sufficient, the settlement proponents are experienced in similar matters, and there are few objectors. *Warfarin*, 391 F.3d at 535.

While there is some overlap between the Rule 23(e) and the *Girsh* factors, plus the analysis already undertaken by this Court in granting Preliminary Approval on April 12, 2021 (Dkt. 43 & 44), each factor will be addressed below.

## IV. ARGUMENT

### A. Settlement Class Certification Should Not Be Disturbed

As part of the January 2, 2024, Preliminary Approval Order, the Court provisionally certified the Class, for settlement purposes only. Dkt. 44 § D, ¶2. There has been no intervening change in the facts or law to warrant revisiting that determination. Plaintiffs respectfully suggest that the certified Settlement Class not be disturbed and instead be permitted to proceed to judgment.

### B. The Rule 23(e) Factors Support Final Approval of the Settlement

#### 1. Adequacy of Representation and Arms' Length Negotiations

Adequacy of representation under Rule 23(e)(2)(A) largely overlaps with the requirements for representation under Rule 23(a)(4). The facts before the Court are unchanged from January 2, 2024 when Judge Pratter concluded Rule 23(a)(4) was satisfied as to the adequacy of the Class Representatives and Class Counsel. Dkt. 43 at 8-9. Nothing warrants deviating from that decision now.

Indeed, the Class Representatives have continued to maintain their commitment to the Class without antagonism. The Class Representatives demonstrated their adequacy by fully participating in the case, providing their knowledge and understanding of the facts and assisting with investigation, discovery, and the Settlement terms. Similarly, Class Counsel continues to

demonstrate their adequacy through their ongoing work to obtain final approval and distribute the Settlement's benefits. Rule 23(e)(2)(A) supports approval of the Settlement because the Settlement Class members have been adequately represented by the Class Representatives and Class Counsel.

Additionally, the proposed Settlement is the product of arms' length negotiations. The posture of the litigation at the time Settlement was reached supports that the Settlement was the product of serious and informed negotiations. Through discovery, motion practice, and experience, Class Counsel was able to fully analyze the merits of the claims, strength of the defenses, and the risks they faced in proving liability and damages. Moreover, before reaching the Settlement, the parties engaged in a formal, 9-hour mediation session with an experienced mediator, who has an emphasis of experience on data breach class actions. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Rose v. Travelers Home and Marine Ins*. Co., 2020 WL 4059613, at *7 (E.D. Pa. July 20, 2020) (alterations in original) (quoting *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 3, 2016)).

Accordingly, the Court should find that the Settlement is the product of serious and informed negotiations. These factors weigh in favor of approval.

### 2. Adequacy of Relief

The proposed Settlement provides adequate relief for the Settlement Class. First, the "relief that the settlement is expected to provide to class members" is adequate when weighed against "the cost and risk involved in pursuing a litigation outcome." Fed. R. Civ. P. 23(e)(2) Advisory Committee Note.

The Settlement's benefits closely track those from other data breach class actions approved in this District. *See, e.g.*, *In re Wawa, Inc. Data Security Litig.*, No. 19-6019, 2022 WL 1173179,

at *7. Among the Settlement's available benefits is 2 years of Pango Group's Identity Defense product, which includes $1 million of identity theft protection and active dark web monitoring. The average cost of this service can range from $7-20 per person, per month. Taking just the 19,528 Settlement Class members that received the Short Form Notice, that relief has a potential value of $136,696, per month on the low end ($7). Over the course of 2 years, the value is $3,280,704 ($136,696 x 24 months). In addition, the Settlement includes a $350,000 capped cash component, which Settlement Class members could apply for various forms of reimbursement, including up to $75 per Class Member for time lost (up to 3 hours at $25) dealing with *any* aspect of the Data Security Incident. Next, ACTS has also enhanced its cyber security protocols and made significant improvements to its data storage practices, increasing the total amount it spends on data security by approximately $428,0000, annually. ACTS also agreed to pay the cost of notice, settlement administration, attorneys' fees, litigation expenses, and service awards outside of any payments made to the Settlement Class members. These payments, if approved, will likely exceed $300,000 when totaled together. As the Court recognized at preliminary approval, when combined, the Settlement's value ranges from at least $600,000 but could potentially total as much as $7.9 million. *Corra v. ACTS Retirement Services, Inc*., 2024 WL 22075, at *12 (E.D. Pa. January 2, 2024).

To determine adequacy of the proposed Settlement, the Court must also evaluate the relative strength of plaintiffs' case on the merits and the existence of difficulties of proof or strong defenses. *See Warfarin*, 391 F.3d at 538 (instructing that upon final approval the court must "evaluate whether the settlement represents a good value for a weak case or a poor value for a strong case"). While proving that the Defendant's cyber security practices may have contributed to the Data Security Incident, establishing causation and damages would have proved difficult.

Indeed, ACTS maintained throughout the litigation that only 187 of the potential 20,000 victims had any financial information exposed in the breach, just .935%. If that proved true, laying blame at the feet of ACTS for adverse account activity for the Class Members would have been nearly impossible. Considering the risks associated with ongoing litigation, compared to the benefits provided by the Settlement, the Settlement is adequate and provides relief well in excess of what protracted litigation would have yielded.

Finally, the proposed attorneys' fees are likewise fair and adequate. The Settlement agreement provides for $250,000 total for Plaintiffs' attorneys' fees and costs. Class Counsel has contemporaneously filed a Motion to Award Attorneys' Fees, Expenses, and Service Awards to be heard during the Final Approval Hearing on July 2, 2024. Dkt. 46. This factor is addressed at length in that Motion and is incorporated herein.

### 3. The Settlement Treats Class Members Equitably Relative to Each Other

Finally, Rule 23(e)(2)(D) requires that the Court consider whether the proposed Settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). The Settlement treats all Settlement Class members equitable in that they are all eligible to receive any of its benefits, including $75 for time spent dealing with any aspect of the Data Breach Incident. Moreover, these benefits are of the same type regularly approved by district courts around the country in similar data breach cases. *See e.g., In re Capital One Consumer Data Security Breach Litig.*, 2022 WL 18107626, at *11 (E.D. Va., Sept. 13, 2022) (finding data breach class action settlement satisfied Rule 23(e)(2)(D) where, "[s]ettlement Class Members are entitled to benefits that are tailored to the relief sought through the litigation: recovery of up to $25,000 in Out-of-Pocket Losses that the Class Member believes are fairly traceable to the Data Breach; payment for Lost Time spent dealing with the Data Breach; at least three years of Identity Defense Services to help detect and remediate potential identity theft and fraud; and at least three years of Restoration

Services including access to U.S.-based specialists in fraud resolution and identity restoration available to all Settlement Class Members without making a claim. Capital One's agreed Business Practice Changes are likewise an important benefit flowing to Settlement Class Members, whose sensitive personal information may still reside at Capital One.").

Accordingly, all of the Rule 23(e) factors are met.

## C. The *Girsh* Factors Support Final Approval of the Settlement.

### 1. Complexity, Expense, and Likely Duration of the Litigation

Like the analysis under Rule 23(e)(2), the first *Girsh* factor requires a court to evaluate the complexity, expense, and likely duration of the litigation. This factor "captures the probable costs, in both time and money, of continued litigation." *Nat'l. Football League*, 821 F.3d at 437 (quoting *Warfarin*, 391 F.3d at 535-36). As described above, if this action were to continue, the parties would likely expend a significant amount of time and money to complete discovery, including numerous depositions, significant motion practice relating to class certification, and summary judgement - before the matter is even presented for trial or appeals.  Because continued litigation would likely be lengthy, expensive, and uncertain, settlement is reasonable. This factor favors approval.

### 2. Reaction of the Class to the Settlement

The second *Girsh* factor asks the court to evaluate the reaction of the class to the proposed settlement agreement. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number of and vociferousness of the objectors." *Gen. Motors*, 55 F.3d at 812.  Here, the last day to object to the Settlement was April 16, 2024, and no objections were lodged. Thus, given the current absence of any objections and only one (1) opt-out of more than 19,000 Settlement Class members, this factor weighs heavily in favor of approval. *See, e.g.*,

*Cendant*, 264 F.3d at 234-35 (finding the second Girsh factor "weighed strongly in favor of the Settlement" where only .0008% of the class objected).

### 3.   Stage of the Proceedings and Amount of Discovery Completed

The third *Girsh* factor asks courts to evaluate the stage of the proceedings and the amount of discovery completed, in order to "determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *Gen. Motors*, 55 F.3d at 813. "[P]ost discovery settlements are more likely to reflect the true value of the claim and be fair." *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 578 (E.D. Pa. 2003). As noted above, written and document discovery was advanced in this litigation revealing strengths and weaknesses of Plaintiffs' claims. Moreover, Class Counsel are experienced in handling data breach litigation and relied on that experience in evaluating the potential outcomes of this matter. This collective understanding of the evidence, coupled with experience, guided and informed the terms of the Settlement; thus, this factor favors approval.

### 4.   Risks of Establishing Liability and Damages

"The fourth and fifth *Girsh* factors survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement." *Nat'l. Football League*, 821 F.3d at 439 (quoting *Prudential*, 148 F.3d at 319). Although Class Counsel is confident that they could establish the Defendant's liability for the Data Breach Incident, that confidence is not nearly as strong when it comes to class wide causation and damages. Obtaining the Settlement, for the benefit of all potential victims, not just the isolated 187, weighs heavily in favor approval.

### 5.   Risk of Maintaining the Class Action Through Trial

The sixth *Girsh* factor asks a court to consider the risk of maintaining the class action through trial, in order to evaluate whether the class action, "if tried, would present intractable

management problems." *Id*. at 440 (quoting *Prudential*, 148 F.3d at 321). Plaintiffs faced a significant choice-of-law problem at class certification. ACTS produced discovery indicating that Settlement Class Members resided in all 50 states, Puerto Rico and the District of Columbia. As the Third Circuit recognized in *Sullivan*, "the legal uncertainty resulting from the complicated choice-of-law issues would unduly complicate the process for establishing predominance under Rule 23." *Sullivan*, 667 F.3d at 309 (internal quotations and citations omitted). This risk supports approval.

### 6.    Ability of Defendants to Withstand a Greater Judgment

The seventh *Girsh* factor asks courts to assess the ability of the defendants to withstand a greater judgment. This factor "is most relevant when the defendant's professed inability to pay is used to justify the amount of the settlement." *Id*. at 440. ACTS has never professed an inability to pay. Thus, this factor is neutral.

### 7.    Range of Reasonableness of the Settlement in Light of the Best Possible Recovery and Range of Reasonableness of the Settlement to Possible Recovery in Light of all the Attendant Risks of Litigation

The eighth and ninth *Girsh* factors ask courts to consider "whether the settlement represents a good value for a weak case or a poor value for a strong case." *Warfarin*, 391 F.3d at 538. "The factors test two sides of the same coin: reasonableness in light of the best possible recovery and reasonableness in light of the risks the parties would face if the case went to trial." *Nat'l Football League*, 821 F.3d at 440 (quoting *Warfarin*, 391 F.3d at 538). "[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *Id.* (quoting *Prudential*, 148 F.3d at 322).

As noted, each Settlement Class member had the same opportunity to obtain multi-faceted benefits from the Settlement, including a one-time $75 payment for up to 3 hours of time spent

dealing with any aspect of the Data Breach Incident. Given that "the outcome of this litigation [remains] uncertain," and given that any continued litigation will be "inevitably time-consuming and expensive," this guaranteed substantial recovery for class members is reasonable. *See N.J. Tax Sales*, 750 F. App'x at 82. It is also "well within a reasonable settlement range when compared with recovery percentages in other class actions." *Warfarin*, 391 F.3d at 538-39 (approving settlement for approximately 33% of best possible recovery); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2020 WL 1922902, at *21 (E.D. Pa. Apr. 21, 2020) (approving settlement for approximately 11.5% of best possible recovery). These factors favor approval.

Like the Rule 23(e)(2) factors, the *Girsh* factors favor approval. For all the reasons stated above, the settlement agreement is fair, reasonable, and adequate to protect the interests of the Settlement Class members. Plaintiffs' motion to approve the settlement should be granted.

## V.  CONCLUSION

For the reasons set forth above, Plaintiffs request that the Court enter an order finally approving the Settlement as fair, reasonable, and adequate under Rule 23(e)(2), and enter judgment on the Settlement for the certified Settlement Class.

Respectfully submitted,

Dated:  May 31, 2024          By: */s/ Patrick Howard*
                            Patrick Howard, Esq. (Atty. ID #88572)
                            **SALTZ MONGELUZZI & BENDESKY, PC**
                            1650 Market Street, 52nd Floor
                            One Liberty Place
                            Philadelphia, PA  19103
                            Telephone:  215-575-3895
                            Facsimile:  215-754-4443
                            phoward@smbb.com

                            Samuel J. Strauss
                            Raina C. Borrelli
                            Brittany Resch
                            **STRAUSS BORRELLI, PLLC**

980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone (872) 263-1100

*Court Appointed Class Counsel*